FILED
COURT OF APPEALS
DIVISION II

2015 FEB 10 AM 8: 54

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In Re the<br>Personal Restraint Petition of:<br><br>JEROME CLINTON PENDER,<br><br>                    Petitioner. | No. 42430-4-II<br><br><br>UNPUBLISHED OPINION |

MAXA, J. — Jerome Pender seeks relief from personal restraint imposed following his conviction for attempted first degree murder with a firearm. In his personal restraint petition (PRP), Pender asserts: (1) the State violated his due process rights and his right to be present, to assistance of counsel, and to participate in his own defense by forcing him to wear during the trial a "stun belt" that would shock him if he did anything wrong; (2) defense counsel provided ineffective assistance by making an inadequate offer of proof to the trial court regarding an excluded witness's testimony; and (3) the trial court erred in sentencing him with a firearm enhancement when the State charged him with a deadly weapon enhancement.

We hold that (1) although Pender's due process rights were violated when the Thurston County Sheriff's Office required him to wear a stun belt, Pender has failed to establish that wearing a stun belt caused actual and substantial prejudice to his case as required for a PRP; (2) Pender's ineffective assistance claim involving defense counsel's inadequate offer of proof is procedurally barred because it merely recasts an argument we previously rejected on direct

appeal; and (3) the State's information provided adequate notice that the State would be seeking a firearm enhancement. Accordingly, we deny Pender's PRP.

## FACTS

In May 2007, the State charged Pender with attempted first degree murder while armed with a deadly weapon, specifically a firearm. A detailed version of the substantive facts of Pender's case is set out in our prior unpublished opinion affirming Pender's conviction on direct appeal. *State v. Pender*, noted at 153 Wn. App. 1025, 2009 WL 4646694.

*First and Second Trial*

Pender's first trial ended in a hung jury and the trial court declared a mistrial. *Pender*, 2009 WL 4646694, at *3.

At Pender's second trial, the State asked the trial court to preclude Pender from calling one of the State's witnesses from the first trial, Brandon Franklin. Franklin had testified to seeing someone he believed to be Pender in Olympia around 6:00 PM on the day of the shooting. *Id.* at *4. The State argued that Pender wanted to call Franklin solely to impeach his testimony with another witness's testimony establishing that Pender was in Tacoma around 5:45 PM on that day. *Id.* Pender argued that he was not trying to impeach Franklin, but rather to demonstrate that eyewitness identification was not necessarily accurate. *Id.* The trial court ruled that, under *State v. Hancock*, 109 Wn.2d 760, 748 P.2d 611 (1988), Franklin's testimony would be inadmissible.[1] *Pender*, 2009 WL 4646694, at *4.

---

[1] In *Hancock*, the Washington Supreme Court held that a party cannot call a witness for the primary purpose of later impeaching that witness's testimony with otherwise inadmissible hearsay statements. 109 Wn.2d at 762-64.

The jury found Pender guilty of attempted first degree murder while armed with a deadly weapon. *Id.* at *5. The trial court's sentence included a firearm enhancement.

*Direct Appeal*

On direct appeal, Pender argued that the trial court erred when it ruled that Franklin's testimony was inadmissible under *Hancock. Pender*, 2009 WL 4646694, at *1. We agreed, holding that *Hancock* could not support the trial court's exclusion of that testimony. *Pender*, 2009 WL 4646694, at *6. Nevertheless, we concluded that the trial court's error in relying on *Hancock* did not require reversal because the trial court could have excluded Franklin's testimony as irrelevant. *Pender*, 2009 WL 4646694, at *6.

Pender also argued for the first time on direct appeal that the trial court should have allowed Franklin's testimony because it established that the shooting might have occurred at 6:00 PM, which would have established that Pender could not have been the shooter. *Id.* at *7. We determined that because Pender did not present this argument to the trial court when he argued for the admission of Franklin's testimony, he did not preserve this argument for appeal. *Id.* However, we also stated that even if Pender had presented this argument to the trial court, we still could affirm the trial court's decision because excluding this evidence was harmless error. *Id.* at *7 n.19.

The Washington Supreme Court denied Pender's petition for review. *Pender*, 169 Wn.2d 1004 (2010). We issued the mandate on August 16, 2010, finalizing Pender's conviction and sentence.

3

42430-4-II

*PRP Proceedings*

Pender timely submitted this PRP. One of his claims involved the fact that he was forced to wear a "stun belt" during the second trial. According to Pender, the stun belt went around his thigh and was connected to a taser box that would shock him with a jolt of electricity if he did anything wrong.

During an initial review of the PRP, we determined that we could not reach the merits of some of Pender's contentions regarding the stun belt on the record before us, so we remanded to the trial court for a reference hearing. Specifically, we asked the trial court to determine:

> (1) was the trial court aware that Pender was wearing a stun belt? If so, did the trial court make an individualized finding, as required by due process and longstanding precedent, *see, e.g., State v. Hartzog*, 96 Wn.2d 383, 400, 635 P.2d 694 (1981), that Pender was sufficiently dangerous or disruptive to necessitate restraining him with a stun belt?

> (2) what effect did the stun belt have on Pender's ability to consult with counsel?

> (3) what effect did the stun belt have on Pender's ability to participate in his own defense?

Order Transferring Pet. For Reference Hr'g at 3 (July 23, 2013) (footnote omitted).

The trial court held the reference hearing on October 7, 2013, and later issued written findings of fact. The trial court found that (1) the trial court judge, the prosecuting attorney, the jury, and Pender's own attorney were unaware that Pender was wearing a stun belt during trial; (2) while the stun belt did cause Pender some discomfort and the "possibility of the device being activated was a distraction to Mr. Pender during the trial," the stun belt "alone did not impair Mr. Pender's ability to consult with his attorney" Clerk's Papers (CP at 81); and (3) Pender

4

presented no specific evidence of any effect the stun belt had on his ability to participate in his own defense.

## ANALYSIS

A.   STANDARD OF REVIEW

To be entitled to relief on a PRP, a petitioner must establish by a preponderance of the evidence that there was a constitutional error that resulted in actual and substantial prejudice or that there was a nonconstitutional error that resulted in a fundamental defect, which inherently results in a complete miscarriage of justice. *In re Pers. Restraint of Woods*, 154 Wn.2d 400, 409, 114 P.3d 607 (2005); *In re Pers. Restraint of Borrero*, 161 Wn.2d 532, 536, 167 P.3d 1106 (2007). This requirement is "necessary to preserve the societal interest in finality, economy, and integrity of the trial process. It also recognizes that the petitioner has had an opportunity to obtain judicial review by appeal." *Woods*, 154 Wn.2d at 409.

Actual prejudice must be determined in light of the totality of circumstances. *In re Pers. Restraint of Music*, 104 Wn.2d 189, 191, 704 P.2d 144 (1985). The ultimate question in determining whether actual prejudice exists is whether the error "so infected petitioner's entire trial that the resulting conviction violates due process." *Music*, 104 Wn.2d at 191. An error warrants relief when the reviewing court has a " 'grave doubt as to the harmlessness of an error.' " *In re Pers. Restraint of Sims*, 118 Wn. App. 471, 477, 73 P.3d 398 (2003) (quoting *In re Pers. Restraint of Smith*, 117 Wn. App. 846, 860, 73 P.3d 386 (2003), *overruled on other grounds by In re Pers. Restraint of Domingo*, 155 Wn.2d 356, 119 P.3d 816 (2005)).

5

Our Supreme Court recently has confirmed that a personal restraint petitioner must establish actual prejudice even for structural error,[2] which in a direct appeal would require reversal without a showing of prejudice. *In re Pers. Restraint of Coggin*, No. 89694-1, WL 7003796 (Wash. Dec. 11, 2014).

B.   USE OF STUN BELT

Pender argues that the Thurston County Sherriff's Office violated his due process rights when it required him to wear a stun belt at both trials without the trial court having made an individualized finding of his dangerousness. We agree. However, Pender has failed to establish that wearing a stun belt caused actual and substantial prejudice to his case.

1.   Due Process

A criminal defendant is "entitled to appear at trial free from all bonds or shackles, except in extraordinary circumstances." *State v. Jennings*, 111 Wn. App. 54, 61, 44 P.3d 1 (2002). As the Washington Supreme Court explained in *State v. Finch*,

> A trial judge must exercise discretion in determining the extent to which courtroom security measures are necessary to maintain order and prevent injury. That discretion must be founded upon a factual basis set forth in the record. A broad general policy of imposing physical restraints upon prison inmates charged with new offenses because they may be 'potentially dangerous' is a failure to exercise discretion.

---

[2] "Structural error is a special category of constitutional error that 'affect[s] the framework within which the trial proceeds, rather than simply an error in the trial process itself.' " *State v. Wise*, 176 Wn.2d 1, 13-14, 288 P.3d 1113 (2012) (quoting *Arizona v. Fulminante*, 499 U.S. 279, 310, 111 S. Ct 1246, 113 L. Ed. 2d 302 (1991)). Structural error is presumed prejudicial and is not subject to harmless error analysis. *Wise*, 176 Wn.2d at 14.

Because of our resolution of this case, we need not decide whether forcing a defendant to wear a stun belt without a finding of necessity is structural error.

137 Wn.2d 792, 846, 975 P.2d 967 (quoting *State v. Hartzog*, 96 Wn.2d 383, 400, 635 P.2d 694 (1981)). The trial court commits constitutional error if it orders that the defendant be restrained without balancing or analyzing the need to restrain the defendant. *State v. Clark*, 143 Wn.2d 731, 775, 24 P.3d 1006 (2001).

Here, the trial court obviously engaged in no analysis regarding the need to use a stun belt on Pender because it did not even know that the stun belt was being used. Instead, a Thurston County deputy sheriff decided that Pender would be required to wear a stun belt at trial based on the severity of the crime. The decision to force Pender to wear a stun belt without even informing the trial court was a violation of Pender's due process rights, in direct contravention to *Hartzog* and the many other shackling cases.

2. Actual Prejudice

Pender does not argue that wearing a stun belt actually affected the outcome of the trial. Instead, he asserts that the stun belt caused actual prejudice because his fear of being shocked interfered with his fundamental constitutional rights to be present, to assistance of counsel, and to participate in his own defense. We disagree. Although forcing a defendant to wear a stun belt at trial could significantly impact these fundamental constitutional rights, the record does not reflect that this occurred here.

Pender did not testify at the reference hearing that his fear of being shocked was so significant that he could not consult with his attorney, follow the testimony of witnesses, participate in his own defense, or testify at trial. Instead, when asked what impact the stun belt had on him during trial, Pender responded – four separate times during his testimony – that the device was merely "irritating." Report of Proceedings (RP) (Oct. 7, 2013) at 40, 57, 61, 79. In

addition, when asked whether wearing a stun belt affected him during his first trial, Pender responded that it did not "[b]ecause my lawyer was a lot better." RP (Oct. 7, 2013) at 64.

Pender argues that his fear of being shocked made him appear cold and emotionless. However, the prosecutor described Pender's demeanor during trial as "pleasant" and Pender's attorney related that, unlike with a number of other defendants, Pender did not seem nervous or worried during trial. RP (Oct. 7, 2013) at 84.

Pender argues that he was afraid to speak with his attorney because any movement could cause a shock. However, Pender's attorney testified that he discourages his clients from speaking to him while the trial is in progress anyway, and instead provides his clients with paper to write notes. Further, Pender's attorney testified that he "did not notice any difficulty communicating with Mr. Pender nor did he notice any behavior that would indicate Mr. Pender was frightened or nervous." CP at 79.

In its factual findings after the reference hearing, the trial court stated,

The discomfort of the shock device and the possibility of the device being activated was a distraction to Mr. Pender during the trial. The shock device alone did not impair Mr. Pender's ability to consult with his attorney. There were specific statements that Mr. Pender wanted to share with his attorney which he testified were not shared. However, Mr. Pender was never restricted from writing notes to his attorney in order to share that information. Nor did the shock device restrict his ability to write notes to his attorney.

CP at 81. The trial court also found more generally that the stun belt did not affect Pender's ability to participate in his own defense.

Given this evidence, we cannot conclude that the stun belt significantly impacted any of Pender's fundamental trial rights or that, if it did, the impact caused prejudice that "so infected

8

[Pender's] entire trial that the resulting conviction violates due process." *Music*, 104 Wn.2d at 191.

Pender has shown that the Thurston County Sheriff's Office violated his due process rights. But because he raised this issue for the first time in a PRP, he is required to show that this constitutional error caused actual and substantial prejudice to his case. Nothing in the record before us reflects that wearing the stun belt significantly impacted Pender's trial. Accordingly, we conclude that Pender is not entitled to relief on this ground.

C.     INEFFECTIVE ASSISTANCE OF COUNSEL

Pender asserts that he received ineffective assistance of counsel because trial counsel gave an insufficient offer of proof in support of the admissibility of Franklin's testimony. Because this argument simply recasts the issue Pender raised in his direct appeal in another form, we conclude that this argument is procedurally barred.

A petitioner may raise new issues on collateral attack by PRP, but a "personal restraint petitioner may not renew an issue that was raised and rejected on direct appeal unless the interests of justice require relitigation of that issue." *In re Pers. Restraint of Lord*, 123 Wn.2d 296, 303, 868 P.2d 835 (1994). As our Supreme Court has explained,

> This burden can be met by showing an intervening change in the law " 'or some other justification for having failed to raise a crucial point or argument in the prior application.' " A defendant may not recast the same issue as an ineffective assistance claim; simply recasting an argument in that manner does not create a new ground for relief or constitute good cause for reconsidering the previously rejected claim.

*In re Pers. Restraint of Stenson*, 142 Wn.2d 710, 720, 16 P.3d 1 (2001) (internal citations omitted).

9

In his direct appeal, Pender argued that the trial court erred in finding Franklin's testimony inadmissible because it was potentially exculpatory. We rejected this argument on the basis that Pender did not preserve this argument by presenting it to the trial court. *Pender*, 2009 WL 4646694, at *7. Even assuming that Pender's counsel was ineffective for not asserting this argument in the trial court in support of Franklin's testimony, this argument merely recasts as an ineffective assistance of counsel claim the same argument we previously rejected on direct appeal.

Pender does not argue that there has been an intervening change in the law and fails to provide a compelling justification for why this issue should be readdressed. Accordingly, we conclude that this argument is procedurally barred and Pender is not entitled to relief on this ground. *Stenson*, 142 Wn.2d at 720.[3]

D.    FIREARM SENTENCING ENHANCEMENT

Pender argues that the trial court improperly imposed a "firearm" enhancement in sentencing when the State charged him with a "deadly weapon" enhancement. We disagree because the State's information provided adequate notice that the State would be seeking a firearm enhancement, and the jury's special verdict finding states that it found Pender was armed with a firearm.

---

[3] In any event, on direct appeal we stated that, "any error in excluding this evidence [Franklin's testimony] was harmless beyond a reasonable doubt" because "every other witness who heard or saw the shooting testified that the shooting occurred around 7:00 pm." *Pender*, 2009 WL 4646694, at *7 n.19. Accordingly, we felt that "no reasonable jury would have believed that the shooting occurred at 6:00 pm." *Id.* This precludes any finding that any deficient performance of counsel prejudiced Pender.

10

A defendant can only be convicted of the crime charged and the State must include in the charging document the essential elements of the crime alleged. *State v. Recuenco*, 163 Wn.2d 428, 434, 180 P.3d 1276 (2008). "The essential elements rule requires a charging document allege facts supporting every element of the offense and identify the crime charged." *Id.* The rule provides defendants with notice of the crime charged so that defendants may prepare a proper defense. *Id.* If the State intends at trial to seek sentencing enhancements, the enhancements must be included in the information. *Id.* at 434-35.

Here, the State's information stated that it was charging Pender with attempted first degree murder, "while armed with a deadly weapon – firearm, . . . RCW 9.94A.533(3)" Resp. to Personal Restraint Pet., App. 3 (capitalization omitted).

At that time, former RCW 9.94A.533(3) stated:

If the offender or an accomplice was armed with a firearm as defined in RCW 9.41.010 and the offender is being sentenced for an anticipatory offense under chapter 9A.28 RCW to commit one of the crimes listed in this subsection as eligible for any firearm enhancements, the following additional times shall be added to the standard sentence range determined under subsection (2) of this section based on the felony crime of conviction as classified under RCW 9A.28.020:

(a) Five years for any felony defined under law as a class A felony.

Having referenced the appropriate statute indicating that Pender was potentially facing a five-year sentencing enhancement for committing a class A felony (attempted first degree murder) while armed with a firearm, the State sufficiently apprised Pender of the enhancement it intended to seek at trial. *Recuenco*, 163 Wn.2d at 434-35.

> At trial, the court's jury instructions stated:
>
> A person is armed with a deadly weapon if, at the time of the commission of the crime, the weapon is easily accessible and readily available for offensive or defensive use. . .
>
> A pistol, revolver, or any other firearm is a deadly weapon whether loaded or unloaded.

Resp. to Personal Restraint Pet., App. 4. Instruction 14 also stated that "A firearm is a weapon or device from which a projectile may be fired by an explosive such as gunpowder." Resp. to Personal Restraint Pet., App. 5. Finally, the jury's special verdict form asked whether Pender was "armed with a firearm at the time of the commission of the crime as charged in Count I." Resp. to Personal Restraint Pet., App. 7.

The State asked the jury to determine whether Pender committed the crime he was accused of while armed with a firearm – just as it had in the information. A firearm sentencing enhancement is authorized "where the deadly weapon special verdict finds that the defendant was armed with a firearm." *In re Pers. Restraint of Cruze*, 169 Wn.2d 422, 433, 237 P.3d 274 (2010). Therefore, we conclude that the trial court did not err in calculating Pender's sentence.

Pender argues that *Recuenco* dictates a different result. However, that case is distinguishable. In *Recuenco*, a jury found that the defendant had used a "deadly weapon" in its special verdict but the verdict form did not define what a "deadly weapon" was. *Id.* at 432; *see also State v. Williams-Walker*, 167 Wn.2d 889, 893-94, 225 P.3d 913 (2010). Moreover, the charging document involved in *Recuenco* did not specify that the State would be seeking a firearm enhancement under former RCW 9.94A.533(3) and no firearm instruction was given to the jury. 163 Wn.2d at 431-32, 439. Under those circumstances, the court concluded that

42430-4-II

"[w]ithout a jury determination that he was armed with a 'firearm,' the trial court lacked authority to sentence Recuenco for the additional two years that correspond with the greater enhancement" and that "Recuenco lacked any notice that he could be sentenced under the firearm enhancement." *Id.* at 440.

Here, unlike in *Recuenco*, the jury clearly returned a firearm special verdict and the information put Pender on notice of the potential enhancement by citing the applicable statute and explicitly mentioning a firearm. Accordingly, *Recuenco* is clearly distinguishable. Pender cannot show that he is entitled to relief on this ground.

We deny Pender's personal restraint petition.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

MAXA, J.

We concur:

BJORGEN, A.C.J.

LEE, J.

13