FILED
COURT OF APPEALS
DIVISION II

2015 AUG 18 AM 9: 06

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In the Matter of the Personal Restraint Petition of | No. 46496-9-II |
| NATHEN R. WRIGHT, | |
| Petitioner. | UNPUBLISHED OPINION |

JOHANSON, C.J. — Nathen R. Wright seeks relief from personal restraint imposed following his 2012 convictions for vehicular homicide, unlawful possession of a controlled substance, and unlawful use of drug paraphernalia. Wright argues that his restraint is unlawful because sufficient evidence does not support his convictions on each count. He also argues that his counsel was ineffective for failing to object to the admission of evidence of a blood draw and for failing to move to sever his drug-related charges from the vehicular homicide charge.

We grant the petition in part because there is not sufficient evidence in the record to support the driving while under the influence of intoxicating drugs alternative of Wright's vehicular homicide conviction. However, we affirm the sufficiency of the evidence regarding the vehicular homicide conviction's reckless driving and driving with disregard for the safety of others alternatives. We further hold that Wright's trial counsel was not ineffective because an objection

to the admission of blood draw evidence would not have been sustained and a motion to sever the drug charges from the vehicular homicide charge would not likely have been granted. Finally, Wright's additional sufficiency challenges fail because he previously raised a sufficiency challenge to the possession element of his possession of a controlled substance and use of drug paraphernalia convictions in his direct appeal and sufficient evidence supports the use element of Wright's use of drug paraphernalia conviction. Accordingly, we grant Wright's petition in part, deny it in part, and remand for resentencing.

## FACTS

In October 2010, Steven Cole was driving and noticed the vehicle Wright was driving swerving from lane to lane behind him. The vehicle came up from behind Cole quickly, continued to swerve, and almost forced Cole off the road. Cole then saw the vehicle drive directly into the back of a school bus that was preparing to make a left-hand turn. Kahil Marshall was the owner of and a passenger in Wright's vehicle and died as a result of the crash. Wright was transported to the hospital.

After the collision, police found a couple syringes and a lighter on one of the floorboards and a spoon with a small piece of wet, brownish cotton in it in the center console area. At trial, Franklin Boshears, a forensic toxicologist with the Washington State Patrol, testified that he tested the cotton and confirmed that it had absorbed heroin. Boshears also testified that when preparing heroin for injection, users often heat the heroin in water to dissolve it and filter it with a syringe through a piece of cotton.

When Wright arrived at the hospital, the police took a blood sample and confirmed that he had 0.05 milligrams of methamphetamine per liter in his blood. At trial, Wright did not object to

2

the admission of the results of the blood test. While at the hospital, Wright also spoke to Detective Stacy Moate, admitted that he had used methamphetamine—but claimed it was several days prior—and admitted that he knew there were drugs in the vehicle. Wright also told Detective Moate that Wright did not see the bus until just before the impact and that he never applied the brakes. Another forensic toxicologist, Justin Knoy, testified about the effects of methamphetamine. Knoy testified that the amount of methamphetamine in Wright's system "may" or "may not" affect a person's driving; that methamphetamine can make divided attention tasks more difficult but may, in some circumstances, improve focus; and that, in general, the amount in Wright's system was not inconsistent with a therapeutic dose. 2 Report of Proceedings (RP) at 249.

The State charged Wright with vehicular homicide, unlawful possession of a controlled substance, and unlawful use of drug paraphernalia. Wright did not move to sever the drug charges from the vehicular homicide charge.

The State argued in closing that Wright was guilty of vehicular homicide because he (1) was under the influence of methamphetamine, (2) was driving recklessly, or (3) was driving with disregard for the safety of others. The State argued,

> [T]he State's not alleging here that the defendant was under the influence of intoxicating liquor. There's no evidence of that at all, other than a whiff that a state trooper got at some point, for whatever reason. The defendant's not under the influence of intoxicating liquor.
> What we do know is that at the time of his blood test in the hospital shortly thereafter, he had .05 milligrams per liter of methamphetamine in his blood. And we know that was consumed recently.

3 RP at 462.

3

The State also argued in rebuttal that Wright might have been driving recklessly or with disregard for the safety of others either because he was weaving from lane to lane or because he was preparing the heroin for injection as he was driving.

Wright argued that he was not guilty of either of the drug charges because there was no evidence establishing how long the syringes, the spoon, or the heroin had been in the car or to prove whether he even knew they were there. Wright also argued that he was entitled to an unwitting possession defense. Relevant to the vehicular homicide charge, Wright's position at trial was that the State failed to prove that the methamphetamine in his system had an adverse effect on his driving or that his driving was anything more than mere ordinary negligence.

The trial court instructed the jury on all three alternative means of committing vehicular homicide and the jury convicted him on each.[1] In his direct appeal, Wright challenged the sufficiency of the evidence supporting his convictions for possession of heroin and for use of drug paraphernalia, arguing that the State did not prove the possession element, and we affirmed both convictions.[2] *State v. Wright*, noted at 179 Wn. App. 1008 (2014). He now seeks relief from personal restraint.

---

[1] A defendant commits vehicular homicide when he drives (1) while under the influence of drugs or alcohol, (2) "[i]n a reckless manner," or (3) "[w]ith disregard for the safety of others." RCW 46.61.520(1)(b)-(c).

[2] Wright did not make a sufficiency challenge to his conviction for vehicular homicide in his direct appeal.

No. 46496-9-II

## ANALYSIS

### I. Standard Of Review

We consider the arguments raised in a personal restraint petition (PRP) under one of two standards, depending on whether the error alleged is constitutional or nonconstitutional. *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 671-72, 101 P.3d 1 (2004). A petitioner raising constitutional error must show that the error caused actual and substantial prejudice. *In re Pers. Restraint of Elmore*, 162 Wn.2d 236, 251, 172 P.3d 335 (2007). We determine actual prejudice in light of the totality of the circumstances. *In re Pers. Restraint of Brockie*, 178 Wn.2d 532, 539, 309 P.3d 498 (2013). The ultimate question in determining whether the petitioner has been actually prejudiced is whether the error "so infected petitioner's entire trial that the resulting conviction violates due process." *In re Music*, 104 Wn.2d 189, 191, 704 P.2d 144 (1985). In contrast, to receive relief following a nonconstitutional error, the petitioner must show a fundamental defect resulting in a complete miscarriage of justice. *In re Pers. Restraint of Cross*, 180 Wn.2d 664, 676, 327 P.3d 660 (2014).

### II. Ineffective Assistance of Counsel

Wright argues his trial counsel was ineffective for failing to object to the admission of blood draw evidence and for failing to move to sever the drug-related charges from the vehicular homicide charge. We disagree.

In a PRP, when the petitioner establishes that he received ineffective assistance of counsel, "he has necessarily met his burden" to show that a constitutional violation occurred and that the violation caused actual and substantial prejudice. *In re Pers. Restraint of Crace*, 174 Wn.2d 835, 846-47, 280 P.3d 1102 (2012).

5

> A defendant claiming ineffective assistance of counsel has the burden to show that
>
> (1) defense counsel's representation was deficient, *i.e.*, it fell below an objective standard of reasonableness based on consideration of all the circumstances; and (2) defense counsel's deficient representation prejudiced the defendant, *i.e.*, there is a reasonable probability that, except for counsel's unprofessional errors, the result of the proceeding would have been different.

*State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). We need not consider both prongs of this test if the defendant fails to prove either one. *Strickland v. Washington*, 466 U.S. 668, 697, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). We apply a strong presumption that trial counsel was not deficient and we do not consider matters outside the record. *McFarland*, 127 Wn.2d at 335. Where a defendant's claim for ineffective assistance of counsel is based on the failure to object to the admission of evidence at trial, he must prove that (1) the failure to object was not a legitimate trial tactic, (2) an objection to the evidence would likely have been sustained, and (3) the defendant was prejudiced. *State v. Hendrickson*, 129 Wn.2d 61, 79-80, 917 P.2d 563 (1996).

A. TRIAL COUNSEL NOT INEFFECTIVE FOR FAILING TO OBJECT TO BLOOD DRAW EVIDENCE

Wright argues that his trial counsel was ineffective for failing to object to evidence of a blood draw because the State laid insufficient foundation under WAC 448-14-020(3)(b) to establish the blood sample's reliability. Specifically, he argues that there was no testimony that an enzyme poison was added to the blood sample. We hold that Wright cannot demonstrate that an objection based on foundation for the blood sample would have been sustained because WAC 448-14-020's requirements apply to blood samples tested for only alcohol content and where, as here, the blood sample is tested for drugs, the same evidentiary foundation need not be laid.

6

WAC 448-14-020's title is "[o]perational discipline of blood samples for alcohol." When testing a blood sample for alcohol, the samples "must be preserved with an anticoagulant and an enzyme poison sufficient in amount to prevent clotting and stabilize the alcohol concentration." WAC 448-14-020(3)(b). The State must lay the proper foundation, by eliciting testimony, that both an anticoagulant and an enzyme poison were added to the sample. *State v. Hultenschmidt*, 125 Wn. App. 259, 265-66, 102 P.3d 192 (2004).

Although Wright is correct that there was no testimony about the enzyme poison, WAC 448-14-020 applies—by its plain language—to testing blood samples for only alcohol and not for drugs. And as demonstrated by its closing argument, the State introduced the blood draw evidence to establish the presence of methamphetamine in Wright's blood, not alcohol.

Thus, because WAC 448-14-020 applies to testing blood for only alcohol content, Wright cannot demonstrate that the trial court would have sustained an objection. Accordingly, this claim fails.

B. TRIAL COUNSEL NOT INEFFECTIVE FOR FAILING TO MOVE FOR SEVERANCE

Wright next argues that his trial counsel was ineffective for failing to move to sever his drug-related charges from the vehicular homicide charge. We hold that Wright's trial counsel was not ineffective because the trial court likely would not have granted a motion to sever because all of the evidence supporting each of the charges arose from the same incident and the evidence supporting each charge is interrelated.

The trial court "shall grant a severance of offenses whenever before trial or during trial with consent of the defendant, the court determines that severance will promote a fair determination of the defendant's guilt or innocence of each offense." CrR 4.4(b). In order to

demonstrate that his trial counsel was ineffective for failing to move for severance, Wright must demonstrate that (1) a severance motion "would likely have been granted" and (2) had the motion been granted, "there is a reasonable probability that the jury would not have found him guilty." *State v. Sutherby*, 165 Wn.2d 870, 884, 204 P.3d 916 (2009).

When deciding whether to sever charges to avoid prejudice to the defendant, the trial court must consider "(1) the strength of the State's evidence on each count; (2) the clarity of defenses as to each count; (3) court instructions to the jury to consider each count separately; and (4) the admissibility of evidence of the other charges even if not joined for trial." *State v. Russell*, 125 Wn.2d 24, 63, 882 P.2d 747 (1994). Separate trials are not favored in Washington. *State v. Dent*, 123 Wn.2d 467, 484, 869 P.2d 392 (1994). "The fact that separate counts would not be cross admissible in separate proceedings does not necessarily represent a sufficient ground to sever as a matter of law." *State v. Kalakosky*, 121 Wn.2d 525, 538, 852 P.2d 1064 (1993).

A person is guilty of vehicular homicide "[w]hen the death of any person ensues within three years as a proximate result of injury proximately caused by the driving of any vehicle by any person" and the driver was operating the vehicle

> (a) [w]hile under the influence of intoxicating liquor or any drug, as defined by RCW 46.61.502; or
> (b) In a reckless manner; or
> (c) With disregard for the safety of others.

RCW 46.61.520(1).

A person is guilty of unlawful use of drug paraphernalia when he uses drug paraphernalia "to plant, propagate, cultivate, . . . compound, convert, produce, process, . . . inject, ingest, inhale, or otherwise introduce into the human body a controlled substance." Former RCW 69.50.412(1) (2012). And it is "unlawful for any person to possess a controlled substance unless the substance

8

was obtained directly from, or pursuant to, a valid prescription or order of a practitioner while acting in the course of his or her professional practice." RCW 69.50.4013(1).

1. STRENGTH OF THE STATE'S EVIDENCE

Wright argues that the strength of the State's evidence factor weighs in favor of severance because the State's evidence on each of the charges was, "*standing alone*, unsupported by the evidence." Br. of Pet'r at 13. We conclude that this factor does not support severance because there is strong evidence supporting each of the charges.

The evidence of vehicular homicide by reckless driving or with disregard for the safety of others is strong based on Cole's testimony regarding Wright's driving and Wright's admissions to Detective Moate. Cole testified that he watched Wright swerving from lane to lane as Wright approached Cole's vehicle from behind. Cole then watched Wright continue swerving as he passed Cole's vehicle until Wright ran directly into a school bus without braking. Wright told Detective Moate that he did not apply the brakes before running into the bus and he was looking down before he even realized that the bus was in front of him. And, as the State argued, a reasonable jury could infer from the presence of the still wet cotton, spoon, syringe, and heroin that Wright failed to brake because he was preparing heroin for injection and was looking down at the time of the collision.

The evidence supporting the possession of heroin charge is also strong. Constructive possession is established where the defendant "has dominion and control" over the item or goods. *State v. Jones*, 146 Wn.2d 328, 333, 45 P.3d 1062 (2002). A person has dominion and control when the "object may be reduced to actual possession immediately." *Jones*, 146 Wn.2d at 333. Courts have often concluded that the driver of a vehicle has constructive possession of its contents.

9

*See, e.g., State v. Bowen*, 157 Wn. App. 821, 828, 239 P.3d 1114 (2010) (fact that the defendant was the owner, driver, and sole occupant of a vehicle in which a firearm was found in a nylon bag beside the driver's seat establishes constructive possession despite conflicting testimony about whether the defendant owned the firearm); *State v. Turner*, 103 Wn. App. 515, 521-22, 13 P.3d 234 (2000) (defendant's admission that he was driving and knew that a rifle was in the back seat, coupled with evidence that the rifle was in close proximity, despite the fact that it was not the defendant's rifle, was sufficient to establish constructive possession of the rifle).

Here, it is undisputed that Wright was driving the vehicle that contained the heroin and that he was at least "generally aware" that there was heroin in the vehicle. Br. of Pet'r at 28. Wright himself told Detective Moate that there were drugs in the vehicle. The evidence at trial also established that the police found the spoon and the cotton in the center console area next to the driver's seat, immediately accessible to Wright. And the cotton in the spoon tested positive for heroin. Further, Wright's admission that he was looking down at the time he hit the bus, combined with the wet cotton that tested positive for heroin suggesting recent preparation for injection, is additional evidence that Wright was in constructive or actual possession of the heroin.

Finally, the evidence supporting the unlawful use of drug paraphernalia charge is also strong based on Boshears's testimony and Wright's admissions.[3] First, Boshears testified that he tested the substance that had been absorbed by the cotton found in the spoon and confirmed that it was heroin. He explained further that the cotton was brown and wet because when heroin is prepared for injection, it is heated, dissolved into water, and filtered through a piece of cotton or a

---

[3] Wright never explicitly admitted to knowing the spoon, the cotton, and the syringes were in the vehicle.

10

cotton ball. Boshears surmised that that was likely what had happened in this case. And, again, Wright told Detective Moate that he knew there were drugs in the vehicle and that he was looking down just before he drove into the back of the school bus. This evidence, combined with Cole's testimony describing his erratic driving, is persuasive evidence that Wright was using the drug paraphernalia at the time of the accident.

We conclude that based on the evidence presented for each charge, the first factor weighs against severing the drug charges from the vehicular homicide charge.

## 2. CLARITY OF WRIGHT'S DEFENSES

Wright argues that the clarity of the defenses as to each charge factor supports severance because his defense to the vehicular homicide charge—a general denial—differed from his defense to the drug charges—that he lacked dominion and control over the heroin or that his possession was unwitting—and because he made different defenses, the jury was likely confused. We conclude that Wright's lack of possession and unwitting possession defenses to the drug charges are separate and distinct from his general denial defense to the vehicular homicide charge and, thus, the defenses as to each count are clear and not confusing to the jury. Accordingly, this factor weighs against severing the charges.

Wright's defense to the possession of heroin charge was that the State did not prove how long the heroin had been in the vehicle or where the heroin was in the vehicle prior to the accident. He also argued that he was entitled to an unwitting possession defense and that regarding the use of drug paraphernalia charge, the State presented insufficient evidence to establish that the spoon was used, when the spoon was used, or who used the spoon to prepare heroin.

11

In contrast, Wright's defense to the vehicular homicide charge was that the State failed to meet its burden. In closing, he argued that, although the State proved that there was methamphetamine in Wright's system at the time of the accident, it did not prove "that it affected his driving." 3 RP at 489. He argued that he was not driving recklessly because the evidence shows that he was driving only 60 or 65 m.p.h., not excessively fast, and that, "for whatever reason," he hit the bus. 3 RP at 490. Wright argued that he was not driving with disregard for the safety of others because the State proved only ordinary negligence and their burden is higher than that.

Wright's defenses do not create confusion because his lack of possession and unwitting possession defenses are separate and distinct from his defense that the State failed to meet its burden to establish that Wright drove while under the influence, recklessly, or with a disregard for the safety of others. Accordingly, we conclude that this factor weighs against severance.

### 3. COURT'S INSTRUCTIONS WERE PROPER

It is undisputed that the trial court gave an appropriate instruction to the jury to "decide each count separately" and that the "verdict on one count should not control [the] verdict on any other count." 3 RP at 439. However, Wright argues that, like in *Sutherby*, the State's argument that he was attempting to inject the heroin while driving combines the crimes and might have confused the jury when it applied the instructions to consider the charges separately. We disagree and conclude that this factor weighs against severance.

In *Sutherby*, the defendant was charged with both possession of child pornography and child rape and molestation. 165 Wn.2d at 876. When considering the third factor in the severance analysis, our Supreme Court held that this factor weighed in favor of severance because the State

12

"consistently" argued that the presence of child pornography on Sutherby's computer showed his motive, providing proof of the molestation. *Sutherby*, 165 Wn.2d at 885-86. But *Sutherby* is distinguishable for two reasons. First, *Sutherby* involved a sex offense and our Supreme Court recognized that "joinder of charges can be particularly prejudicial when the alleged crimes are sexual in nature. In this context there is a recognized danger of prejudice to the defendant even if the jury is properly instructed to consider the crimes separately." 165 Wn.2d at 884 (citation omitted).

Second, in *Sutherby*, the factual bases of the crimes were completely unrelated, yet the State used Sutherby's alleged possession of child pornography as evidence of motive to commit the child rape and molestation. Here, the factual bases of each of the charges are intertwined. The offenses all occurred at the same time and place and the State argued that the use of the drug paraphernalia directly contributed to Wright driving into the back of a school bus without braking and while looking down, killing his passenger. Thus, *Sutherby* is not persuasive.

Here, the State argued that Wright may have been preparing the heroin to inject while driving:

> This heroin was still wet. It was still -- it was basically in the condition to draw it out in the syringe. The bottom was burnt. You see a lighter in the car at Mr. Wright's feet in that picture where the syringes are. There is . . . the spoon and the heroin is sitting on the center console. That would certainly explain . . . or reasonable inference to make from the evidence, that the driving -- erratic driving was being done because one of them was attempting to light up this heroin.

3 RP at 503. This argument is unlike the one in *Sutherby* because the use of the drug paraphernalia occurred at the same time and place as the vehicular homicide and the evidence underlying each of the drug charges is directly linked with Wright's driving recklessly or with disregard for the safety of others. Therefore, we conclude that this factor weighs against severance because the jury

13

was properly instructed to consider each of the charges separately and the State's argument did not undermine those instructions.

4. ADMISSIBILITY OF EVIDENCE OF OTHER CHARGES

Wright argues that the evidence pertaining to the vehicular homicide would not be admissible in a trial on the drug charges because that evidence is not relevant to proving possession of heroin and use of drug paraphernalia. We disagree and conclude that this factor weighs against severance.

The direct evidence that is necessary to prove that Wright was in possession of heroin and using drug paraphernalia was all located inside the vehicle. This evidence includes the syringes on the driver's side floorboard and the spoon and piece of wet cotton that were found in the center console area. But the fact that he was driving erratically and that he hit a school bus without braking and while looking down is circumstantial evidence that he was preparing to inject heroin and that he was in fact using the drug paraphernalia and was in possession of heroin at the time of the collision. The erratic driving evidence that supports the vehicular homicide charge was therefore also admissible to prove the drug charges. The factual, evidentiary basis for each of the offenses is intertwined and related.

Likewise, the spoon, wet cotton, lighter, and heroin are relevant to the vehicular homicide charge. Cole testified that Wright was driving erratically and collided with the bus without braking. Wright also admitted that he did not even attempt to brake before the crash and that he was looking down just before the collision. The wet cotton, spoon, heroin, and lighter found in the front of the vehicle in the center console area is circumstantial evidence that Wright was distracted from his driving by the drug preparation.

14

The State argued that it was reasonable for the jury to infer that Wright was preparing to inject the heroin while he was driving because the heroin was in the vehicle, the cotton was still wet when police arrived, and there were also syringes in the vehicle. This set of facts clearly show that the evidence to prove use of drug paraphernalia, possession of heroin, and the vehicular homicide was cross admissible.

Acknowledging that Washington courts do not favor separate trials, *Dent*, 123 Wn.2d at 484, and after analyzing (1) the strength of the State's evidence on each charge, (2) the clarity of Wright's defenses, (3) the trial court's instructions, and (4) the cross admissibility of the evidence, we conclude that the trial court would have denied any severance motion. Accordingly, we hold that Wright's trial counsel was not ineffective because Wright cannot establish that a motion to sever "would likely have been granted." *Sutherby*, 165 Wn.2d at 884.

## II. SUFFICIENCY OF THE EVIDENCE

Wright next argues that the evidence is insufficient to support each of his three convictions. We decline to address Wright's claims that insufficient evidence supports the possession element of his convictions for unlawful possession of heroin and unlawful use of drug paraphernalia, and we hold that sufficient evidence supports the use element of his conviction for use of drug paraphernalia. We further hold that regarding his conviction for vehicular homicide, there is insufficient evidence to support the driving while under the influence of intoxicating drugs alternative but that the evidence is sufficient to support the reckless driving and driving with disregard for the safety of others alternatives.

When determining whether sufficient evidence supports a defendant's conviction, we ask whether, when viewing the evidence in a light most favorable to the State, any rational trier of fact

could have found the essential elements of the crime charged beyond a reasonable doubt. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). A sufficiency challenge admits the truth of the State's evidence and all reasonable inferences that can be made from that evidence. *Salinas*, 119 Wn.2d at 201. This court must defer to the trier of fact's credibility determinations, particularly on questions of conflicting testimony, witness credibility, and the weight of evidence. *State v. Thomas*, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004).

### A. UNLAWFUL POSSESSION OF A CONTROLLED SUBSTANCE

Wright argues that his conviction for possession of heroin should be reversed because proximity to the drugs and knowledge that they were in the vehicle is insufficient for a conviction. We decline to reach this issue because Wright raised it in his direct appeal.

A personal restraint petitioner should not raise issues that were "'finally resolved at trial and direct review'" but should, instead, seek to raise new questions of "'fact and law that were not or could not have been raised in the principal action.'" *Davis*, 152 Wn.2d at 670-71 (quoting *In re Pers. Restraint of Gentry*, 137 Wn.2d 378, 388-89, 972 P.2d 1250 (1999)). In particular, a personal restraint petitioner is "prohibited from renewing an issue that was raised and rejected on direct appeal unless the interests of justice require relitigation of that issue" and a "'new' issue" does not exist where the petitioner merely supports a "previous ground for relief with different factual allegations or with different legal arguments." *Davis*, 152 Wn.2d at 671.

RCW 69.50.4013(1) provides that it is "unlawful for any person to possess a controlled substance unless the substance was obtained directly from, or pursuant to, a valid prescription or order of a practitioner while acting in the course of his or her professional practice." Wright challenged the sufficiency of the evidence to support his conviction for unlawful possession of a

16

controlled substance in his direct appeal. He argued specifically that the "evidence presented was insufficient to prove that [he] constructively possessed the heroin" and that the facts demonstrated that any "alleged possession of heroin was unwitting." Br. of Appellant at 8 (No. 43226-9-II). He now argues that there is insufficient evidence because proof of dominion and control of the vehicle and knowledge that drugs were in the car is not enough. This is merely an attempt, based on this court's decision in the direct appeal, to reargue a previous ground for relief—sufficiency of the evidence based on the possession element of the offense—with different legal arguments. Because Wright argued that insufficient evidence supports his conviction for unlawful possession of heroin in his direct appeal and he makes no argument about whether and how the interests of justice require relitigating the issue, we decline to address this argument.

### B. UNLAWFUL USE OF DRUG PARAPHERNALIA

Wright further argues that insufficient evidence supports his conviction for use of drug paraphernalia because (1) the State did not prove that he used the drug paraphernalia in a "drug-related activity" and (2) based on Division One of this court's decision in *State v. George*, 146 Wn. App. 906, 193 P.3d 693 (2008), the State cannot establish that he possessed the drug paraphernalia. We hold that sufficient evidence supports the use element of Wright's conviction for unlawful possession of drug paraphernalia and decline to address Wright's sufficiency challenge to the possession element because he raised it in his direct appeal.

### 1. USE ELEMENT

Several officers testified that they noticed the spoon that was found in the vehicle and the fact that the spoon was wet and had a brown piece of cotton inside it. Boshears tested the brown

piece of cotton for drugs and confirmed that it contained heroin. He testified further about how

heroin is typically prepared for injection:

> As I understand it, the heroin is placed into a spoon with a small amount of water. And the spoon is heated to dissolve the heroin into the water. And there will be a small bit of cotton in the spoon -- spoon bowl as well. And the liquid is drawn up through the cotton to act as a kind of filter.

2 RP at 300-01. In other words, the cotton in the vehicle that Boshears tested would not have been

brown unless the heroin had already been dissolved into the water and absorbed by the cotton.

From this evidence, a rational jury could find that Wright used drug paraphernalia—the spoon and

the cotton—to either convert or process the heroin for use because the heroin had been dissolved

into the water. This is sufficient evidence from which a rational jury could find each of the

essential elements of use of drug paraphernalia beyond a reasonable doubt.[4]

2. POSSESSION ELEMENT

Next, Wright relies on Division One of this court's decision in *George* to support his

argument that insufficient facts connect Wright to the drugs and drug paraphernalia in this case.

However, we decline to address this argument because Wright raised a sufficiency challenge to

the possession element in his direct appeal.

Wright challenged his unlawful use of drug paraphernalia conviction on sufficiency

grounds in his direct appeal, specifically arguing that the State could not prove possession because

there was "no evidence as to how long the spoon had been in the car, no evidence as to where the

---

[4] In his statement of facts, Wright argues that this court's opinion in his direct appeal "mischaracterized" his conviction for unlawful use of drug paraphernalia as a conviction for unlawful "*possession* of drug paraphernalia." Br. of Pet'r at 8. This was a scrivener's error because he was charged with unlawful *use* of drug paraphernalia and there is no such crime as unlawful *possession* of drug paraphernalia.

18

spoon was prior to impact, and no evidence that Wright was even aware of the spoon's presence in Marshall's vehicle." Br. of Appellant at 9 (No. 43226-9-II). Wright now argues, based on *George*, that there was insufficient evidence to establish that he had dominion and control over the drugs and the drug paraphernalia. This argument is merely an attempt to reargue a previously raised ground for relief—insufficient evidence of possession—using a different legal theory. Therefore, we decline to address it.

## C. VEHICULAR HOMICIDE

Finally, Wright argues that his conviction for vehicular homicide is not supported by sufficient evidence because there was no evidence showing that he was under the influence of any drug and there was no evidence suggesting that he was driving recklessly or with a disregard for the safety of others. We agree that insufficient evidence supports the driving under the influence of drugs alternative to vehicular homicide. However, we hold sufficient evidence supports the reckless driving and driving with disregard for the safety of others alternatives to vehicular homicide.

In this case, the jury was instructed on each alternative means and convicted Wright based on all three. To support alternative RCW 46.61.520(1)(a), the State presented evidence that Wright had 0.05 milligrams per liter of methamphetamine in his system at the hospital after the accident, he was driving erratically when he hit the bus, and he did not see the bus or apply the brakes before he collided with it.

However, the State failed to submit any evidence that the methamphetamine in Wright's system was what caused his erratic driving. In fact, Knoy could only opine that 0.05 milligrams per liter "may" or "may not" affect a person's driving. 2 RP at 249. He stated that whether the

methamphetamine affected Wright was likely a matter of when he ingested it. But the State did not present any evidence—apart from Wright's own statement that he had taken the methamphetamine a few days earlier—to establish that fact. Instead, the State argues that Wright's reckless and erratic driving is proof that the methamphetamine affected his driving. But what is missing is evidence that the methamphetamine is causally related to Wright's erratic driving. Therefore, we conclude the State's evidence is insufficient to support a finding that Wright was operating a motor vehicle under the influence of an intoxicating drug.

To support alternatives RCW 46.61.520(1)(b) and (c), the State presented evidence that Cole witnessed Wright driving behind him erratically, swerving from lane to lane. Wright continued to swerve as he approached Cole's vehicle from behind, which required Cole to move onto the shoulder to avoid a collision. Wright continued to drive erratically until he drove directly into the back of the school bus without braking.

This evidence is sufficient for any rational jury to conclude that Wright was driving recklessly or driving with disregard for the safety of others. Therefore, we conclude that Wright's conviction for vehicular homicide based on these alternatives is supported by sufficient evidence.

Because under former RCW 9.94A.515 (2012) and RCW 9.94A.510, the standard range for a vehicular homicide conviction based on driving under the influence of intoxicating drugs is higher than for reckless driving and driving with a disregard for the safety of others, we remand for resentencing.

No. 46496-9-II

The petition is granted in part and denied in part. We remand for resentencing.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

JOHANSON, C.J.

We concur:

BJORGEN, J.

MELNICK, J.

21