[No. 50404–1. En Banc. October 25, 1984.]

*In the Matter of the Personal Restraint of*
STEVEN WAYNE GUNTER, *Petitioner.*

*Forsch & Maslan, Robert G. Maslan,* and *Michael P. Harris,* for petitioner.

*Norm Maleng, Prosecuting Attorney,* and *Barbara L. Corey–Boulet* and *Deborah J. Phillips, Deputies,* for respondent.

DORE, J.—We hold the rule in *State v. Tongate* retroactive in personal restraint petitions, and grant the relief requested.

In *State v. Tongate,* 93 Wn.2d 751, 613 P.2d 121 (1980), we held that enhanced punishment under RCW 9.95.040 requires proof beyond a reasonable doubt that the defendant was armed with an actual deadly weapon when he committed the crime. *State v. Pam,* 98 Wn.2d 748, 659 P.2d 454 (1983) held the rule in *Tongate* to be retroactive to all cases

pending on direct appeal at the time *Tongate* was decided. In *Pam,* at 757 n.5, we noted: "We specifically do not address the retroactive reach of our decision to the cases that still may raise the issue on collateral attack." This precise issue is now answered here.

## FACTS

Defendant was charged with two counts of second degree kidnapping and two counts of second degree assault arising out of an incident which occurred on July 21, 1976. In all four counts, it was alleged that he was armed with a firearm. The defendant was found guilty on one count of second degree assault, with a special finding that he was armed with a deadly weapon or firearm. The jury was not instructed that the State was required to prove beyond a reasonable doubt that defendant was armed with a deadly weapon or firearm for purposes of enhanced punishment under RCW 9.95.040. He received a mandatory minimum sentence of 7½ years under RCW 9.95.040(2), and a maximum sentence of 10 years' imprisonment.

The Court of Appeals affirmed. *State v. Gunter,* 24 Wn. App. 1011 (1979) (unpublished opinion). This court subsequently denied his petition for review. *State v. Gunter,* 93 Wn.2d 1011 (1980). Four months later, on June 19, 1980, we held the State must prove the presence of a deadly weapon beyond a reasonable doubt when seeking application of the mandatory minimum sentence provisions of RCW 9.95.040. *State v. Tongate, supra.*

## RETROACTIVITY

■ Traditional retroactivity analysis applies to the present case where we are asked to apply a new constitutional rule retroactively to a case on collateral review. *Solem v. Stumes,* __ U.S. __, 79 L. Ed. 2d 579, 104 S. Ct. 1338 (1984). Ordinarily the court will balance three factors to determine whether the new rule applies retroactively:

1. The purpose to be served by the new standards;

2. The extent of reliance by law enforcement officials on the old standards;

3. The effect on the administration of justice of a retroactive application of the new standards.

*See Stovall v. Denno,* 388 U.S. 293, 297, 18 L. Ed. 2d 1199, 87 S. Ct. 1967 (1967); *Brumley v. Charles R. Denney Juvenile Ctr.,* 77 Wn.2d 702, 707, 466 P.2d 481 (1970). However,

> "Where the major purpose of new constitutional doctrine is to overcome an aspect of the criminal trial that substantially impairs its truth–finding function and so raises serious questions about the accuracy of guilty verdicts in past trials, the new rule has been given complete retroactive effect. Neither good–faith reliance by state or federal authorities on prior constitutional law or accepted practice, nor severe impact on the administration of justice has sufficed to require prospective application in these circumstances."

*Ivan V. v. New York,* 407 U.S. 203, 204, 32 L. Ed. 2d 659, 92 S. Ct. 1951 (1972) (quoting from *Williams v. United States,* 401 U.S. 646, 653, 28 L. Ed. 2d 388, 91 S. Ct. 1148 (1971)).

■ We find that the new constitutional rule announced in *State v. Tongate, supra,* clearly implicates the truth-finding function of the trial and, therefore, merits full retroactive application to cases on collateral review. In *In re Winship,* 397 U.S. 358, 25 L. Ed. 2d 368, 90 S. Ct. 1068 (1970), the United States Supreme Court held that proof beyond a reasonable doubt was an essential element of due process to be afforded at the adjudicatory stage when a juvenile is charged with an act that would constitute a crime if committed by an adult:

> The reasonable–doubt standard plays a vital role in the American scheme of criminal procedure. It is a prime instrument for reducing the risk of convictions resting on factual error.

*In re Winship, supra* at 363. The Court continued at page 364:

> ". . . Due process commands that no man shall lose his liberty unless the Government has borne the burden of . . . convincing the factfinder of his guilt." [*Speiser v. Randall,* 357 U.S. 513, 525–26, 2 L. Ed. 2d 1460, 78 S. Ct.

1332 (1958).] To this end, the reasonable–doubt standard is indispensable, for it "impresses on the trier of fact the necessity of reaching a subjective state of certitude of the facts in issue." Dorsen & Rezneck, In Re Gault and the Future of Juvenile Law, 1 Family Law Quarterly, No. 4, pp. 1, 26 (1967).

In holding the *Winship* rule fully retroactive, the Court, in *Ivan V. v. New York, supra,* concluded at page 205:

> Plainly, then, the major purpose of the constitutional standard of proof beyond a reasonable doubt announced in *Winship* was to overcome an aspect of a criminal trial that substantially impairs the truth–finding function, and *Winship* is thus to be given complete retroactive effect.

In *State v. Pam, supra* at 755, we recognized that *Tongate* rejected any distinction between the proof required for the elements of an offense under *Winship,* and the proof required for a sentence enhancement provision. The purpose of the rule is to overcome an aspect of the criminal trial that substantially impairs its truthfinding function. As we stated in *Tongate,* at page 756:

> The special verdict [deadly weapon finding] is a separate finding made after the guilt–determining stage of the jury's deliberations. It cannot be assumed that a reasonable jury, in the absence of an explicit instruction on the standard of proof, will understand the applicable standard to be applied to the separate finding where, as here, the fact to be found is not an element of the crime as charged.

Good faith reliance by law enforcement officials on the pre-existing rule, or any minor administrative burdens which may result from retroactive application of *Tongate* will not justify any limitation on its retroactivity. *Hankerson v. North Carolina,* 432 U.S. 233, 53 L. Ed. 2d 306, 97 S. Ct. 2339 (1977).

### DEFENDANT MUST BE ACTUALLY PREJUDICED

█ The fact that we have held the *Tongate* rule to be retroactive does not necessarily entitle defendant to relief. In order to obtain relief by means of a personal restraint petition, the defendant must also establish that, more likely

than not, he was actually prejudiced by the constitutional error. *In re Haverty,* 101 Wn.2d 498, 681 P.2d 835 (1984); *In re Hews,* 99 Wn.2d 80, 660 P.2d 263 (1983); *In re Hagler,* 97 Wn.2d 818, 650 P.2d 1103 (1982). We, therefore, must determine whether petitioner has shown that the failure to instruct the jury on the standard of proof with respect to the firearm allegation worked to his actual and substantial prejudice.

In *In re Lile,* 100 Wn.2d 224, 668 P.2d 581 (1983), the court held the prejudicial effect of the failure to instruct on the presumption of innocence must be determined in light of the totality of circumstances, with consideration given to the trial court's instructions, the arguments of counsel, the weight of evidence of guilt, and other relevant factors. *See also Kentucky v. Whorton,* 441 U.S. 786, 789, 60 L. Ed. 2d 640, 99 S. Ct. 2088, *reh'g denied,* 444 U.S. 887 (1979).

■ The instant case concerns the prejudicial effect of the failure to instruct on reasonable doubt relative to the deadly weapon allegation for purposes of sentence enhancement. In *State v. Cox,* 94 Wn.2d 170, 174, 615 P.2d 465 (1980), the court expressly held failure to instruct on reasonable doubt is per se reversible error:

> The function of informing the jury of the reasonable doubt standard can only be achieved by a specific instruction. Therefore when, as in the *McHenry* [*State v. McHenry,* 88 Wn.2d 211, 558 P.2d 188 (1977)] case, the jury instructions fail to include a specific instruction on reasonable doubt, the omission is per se reversible error.

Thus, in the instant case, the trial court's failure to require proof beyond a reasonable doubt on the firearm allegation was per se prejudicial and defendant has met his burden on collateral review.

However, even if the totality of circumstances test of *In re Lile, supra,* is applied, the record in this case shows actual prejudice. Defendant's second degree assault charge arose out of an incident involving two groups of teenage and young adult friends feuding over the theft of a stereo. Gunter, along with his girl friend, was attempting to assist

Jerry Johnson and his girl friend recover their stereo which apparently had been stolen. Gunter, Johnson and the two young women traveled to a home where they had reason to believe the stereo was being stored. Fifteen to twenty people emerged from the house. In the ensuing heated discussion over the whereabouts of the stereo, Gunter admittedly struck Michael Crisler in the nose.

At trial, all prosecution witnesses testified Gunter had a gun. Gunter denied having a gun or any other weapon. All defense witnesses denied seeing Gunter with a gun or weapon at the crime scene. No gun was recovered or introduced into evidence. The doctor who treated the assault victim testified that the injuries suffered could have been inflicted with a ring or any other hard object and did not necessarily result from being struck with a gun butt. The defense established that Gunter wore a large ring on his hand which was turned over to King County police personnel when defendant was booked. Jail personnel subsequently lost the ring and it remained lost at trial.

The prosecutors strongly argued to the jury that the only issue they had to determine was the presence of a gun:

> This whole case, with all of the facts and a lot of law which has been given to you in this case, boils down to five words: Did he have a gun. If he had a gun, he is guilty as charged under Counts I, II, III and IV, and the special verdict forms are all yes, he had a deadly weapon and yes, it was a firearm.

Report of Proceedings, at 283. Moreover, the trial court's instruction 11, defining the elements necessary to convict the defendant on count 4, the count on which he was ultimately convicted, provided as follows:

INSTRUCTION No. 11

To convict the defendant of the crime of assault in the second degree, as charged in Count IV of the information, each of the following elements of the crime must be proved beyond a reasonable doubt:

(1) That on or about the 21st day of July, 1976, the defendant knowingly:

(a) assaulted Michael Crisler with a weapon or other

instrument or thing likely to produce bodily harm; or

(b) inflicted grievous bodily harm upon Michael Crisler with or without a weapon.

(2) That the acts occurred in King County, Washington.

If you find from the evidence that element (2) and either (1)(a) or (1)(b) have been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty as to Count IV. Elements (1)(a) and (1)(b) are alternatives and only one need be proved.

On the other hand, if, after weighing all of the evidence, you have a reasonable doubt as to any one of these elements, then it will be your duty to return a verdict of not guilty as to Count IV.

This instruction allowed the jury to convict Gunter of second degree assault without a finding that he was armed with a firearm. Thus, although they were instructed that they must be convinced of the specific elements of the crime beyond a reasonable doubt, the standard of proof required for the special verdict was ambiguous at best. Absent an explicit instruction on the standard of proof, the jury could not be expected to apply the proper standard to the special verdict when the fact to be found, *i.e.,* presence of a deadly weapon or firearm, is not an element of the crime charged. *State v. Tongate,* 93 Wn.2d 751, 613 P.2d 121 (1980).

## CONFINEMENT CREDIT

Finally, defendant contends he is entitled to credit against his sentence for the 4 months 22 days he spent in jail between the date of his arrest and the date of sentencing. He was arrested September 17, 1977 and sentenced for the assault conviction on February 9, 1978. In *In re Phelan,* 97 Wn.2d 590, 647 P.2d 1026 (1982), we expressly held that a criminal defendant is entitled to credit against the maximum term of his sentence for all time in jail prior to being sentenced. Defendant shall be credited for the 4 months 22 days he served in jail prior to his sentencing.

## CONCLUSION

The trial court's failure to instruct the jury that the State

must prove the presence of a deadly weapon beyond a reasonable doubt actually prejudiced the defendant. Therefore, the special verdict that he was armed with a deadly weapon, and the consequent minimum 7½–year sentence imposed pursuant to RCW 9.95.040, shall be vacated.

We grant the personal restraint petition and remand to the trial court for resentencing without enhancement of punishment.

On resentencing, defendant shall also be credited for 4 months 22 days he served in jail prior to his initial sentencing.

WILLIAMS, C.J., ROSELLINI, UTTER, BRACHTENBACH, DOLLIVER, and PEARSON, JJ., and CUNNINGHAM and MORGAN, JJ. Pro Tem., concur.