[No. 51012–1. En Banc. August 1, 1985.]

*In the Matter of the Personal Restraint of*
JOHN THOMAS MUSIC, *Petitioner.*

190

*Robert A. Stalker, Jr.,* of *Evergreen Legal Services,* for petitioner.

*Norm Maleng, Prosecuting Attorney,* and *Deborah J. Phillips, Senior Appellate Attorney,* for respondent.

DOLLIVER, C.J.—In 1969 petitioner John Thomas Music was found guilty by a King County jury of one count of robbery, three counts of attempted robbery, and felony murder. This court affirmed on all counts. *State v. Music,* 79 Wn.2d 699, 489 P.2d 159 (1971) (*Music* I). The United States Supreme Court vacated the death sentence. *Music v. Washington,* 408 U.S. 940, 33 L. Ed. 2d 764, 92 S. Ct. 2877 (1972). At resentencing, petitioner was sentenced to life imprisonment for the murder conviction, to run concurrently with the sentences on the other convictions for robbery and attempted robbery.

The facts of the crimes for which Music was convicted are contained in *Music* I and need not be recounted here. *See Music* I, at 701–03. Music, currently an inmate in the Washington State Penitentiary, seeks habeas corpus relief alleging two jury instructions at his trial when he was convicted of first degree murder violated *Sandstrom v. Montana,* 442 U.S. 510, 61 L. Ed. 2d 39, 99 S. Ct. 2450 (1979). *See also Francis v. Franklin,* ___ U.S. ___, 85 L. Ed. 2d 344, 105 S. Ct. 1965 (1985) (extending *Sandstrom* to rebuttable

presumptions). The Court of Appeals, Division One, certified this matter to us with the request this court determine whether the rule in *Sandstrom* and *State v. Caldwell,* 94 Wn.2d 614, 618 P.2d 508 (1980) should "be applied retroactively to a case where the defendant did not propose the challenged instruction and lack of intent and insanity were issues at trial."

The United States Supreme Court has recently split on the issue whether in a direct appeal an instruction in violation of *Sandstrom* may be considered harmless. *See Connecticut v. Johnson,* 460 U.S. 73, 74 L. Ed. 2d 823, 103 S. Ct. 969 (1983); *Engle v. Koehler,* 707 F.2d 241 (6th Cir. 1983), *aff'd,* 466 U.S. 1, 80 L. Ed. 2d 1, 104 S. Ct. 1673 (1984). It has yet to speak on the issue of whether *Sandstrom* is retroactive in collateral review. We also decline to express our views on retroactivity, although for purposes of this proceeding, we consider there to have been error of constitutional dimension. The question then becomes whether the error requires granting of the petition. We hold it does not.

 Actual prejudice must be determined in light of the totality of circumstances. This court will consider the jury instructions given, the arguments of counsel, weight of evidence of guilt, and other relevant factors in evaluating whether a particular instruction caused actual prejudice. *In re Gunter,* 102 Wn.2d 769, 689 P.2d 1074 (1984). The ultimate question for this court is whether the giving of the *Sandstrom*–offending instruction so infected petitioner's entire trial that the resulting conviction violates due process. *In re Lile,* 100 Wn.2d 224, 668 P.2d 581 (1983).

At issue are jury instructions 9 and 25:

### No. 9
The court instructs the jury that the law presumes that every man intends the natural and probable consequences of his own acts. It is not necessary to establish intent by direct and positive evidence but intent may be established by inference and in the same way as any other fact by taking into consideration the acts of the parties and all the facts and circumstances of the case.

No. 25

The law presumes every man to be sane and mentally responsible, and to intend the natural and probable consequences of his acts, until the contrary is shown.

The burden of proving insanity as a defense to a crime rests upon the defendant to establish by a preponderance of the evidence, and unless insanity is established by a fair preponderance of the evidence, the presumption of sanity must prevail.

Music claims the presumption contained in jury instructions 9 and 25 that persons intend the natural and probable consequences of their own acts violates the rule set forth in *Sandstrom* and *Caldwell* and caused actual and substantial prejudice. *See In re Haverty,* 101 Wn.2d 498, 681 P.2d 835 (1984).

Specifically, as to instruction 25, petitioner argues that the presumed intent phrase, in *combination* with the presumption of sanity instruction, caused him actual prejudice because the jury would reasonably assume, from the wording of the instruction, that petitioner had the burden of proof on intent as well as insanity.

A review of the jury instructions as a whole convinces us the jury was correctly informed of the law despite the *Sandstrom* error. Instructions 13 through 17 reflected almost verbatim the robbery and attempted robbery statutes from which they were derived. *See Music* I, at 711. Jury instruction 10 made quite clear that voluntary intoxication may be found to negate the requisite specific intent to commit a robbery. Jury instruction 11 again restated the rule of law pertaining to intoxication and specific intent. *See In re Haverty,* at 505–06.

*In re Hagler,* 97 Wn.2d 818, 650 P.2d 1103 (1982) held the petitioner in a personal restraint petition has the burden of showing any constitutional error caused actual and substantial prejudice. We hold petitioner here did not meet that burden.

Although Music on appeal challenged the legal sufficiency of the evidence to support his conviction of the charge of attempted robbery of Traice Walters, the victim

of the felony murder, there is nothing in the record or in the personal restraint petition which is contrary to the statement made by the court in *Music* I, at 711:

> [I]n light of other evidence introduced at trial concerning previous and subsequent activities of the appellant, we think the jury could have concluded that the incident resulting in the death of Traice Walters was part of a common scheme or plan on the part of appellant and his companions to commit robberies on the day in question.

There was abundant evidence at trial of the specific intent of Music to commit the robbery of Traice Walters. The evidence leading to petitioner's conviction was not merely circumstantial. It was composed largely of testimony by his companions. There was also substantial evidence of motive. *Music* I, at 701–03. *Cf. State v. Caldwell,* at 618. At trial, petitioner was identified as the person who attempted to steal the decedent's jacket and who fired at him. *Music* I, at 702. Petitioner also was identified by two other robbery victims as the person who attempted to hold them up 1 hour after the fatal shooting. *Music* I, at 702. On the matter of petitioner's alleged intoxication, the testimony that petitioner was so intoxicated that he could not form intent was very slight. We find nothing which gives any merit to a claim of actual and substantial prejudice because of unconstitutional instructions.

Finally, petitioner asserts he was actually and substantially prejudiced by jury instruction 25, the insanity defense instruction, since it confused the separate issues of intent and sanity. The effect of claiming insanity may be to admit the act was intentional but claim an incapacity at the time it was committed. *See* W. LaFave & A. Scott, *Criminal Law* § 36, at 269 (1972). In *Connecticut v. Johnson, supra* at 87, the plurality stated that in "presenting a defense such as alibi, insanity, or self–defense" the harmfulness of *Sandstrom*–like errors is reduced since the fact of intention may be conceded. Even if there was no such concession under the facts of this case, there is nothing in the record which persuades us of the harmfulness of the erroneous instruc-

tion. The evidence of intent to rob Traice Walters was overwhelming.

The jury was clearly instructed that the State had the burden of proof on *each* element of attempted robbery and that a reasonable doubt as to *any* element must result in petitioner's acquittal. The jury was also instructed that the first element of attempted robbery is that defendant acted "willfully, unlawfully and feloniously". Instruction 16. In instruction 12, the terms willfully, unlawfully, and feloniously were defined for the jury as "intentionally and purposely". Petitioner has not met his burden to show actual and substantial prejudice.

The petition is denied.

DORE, ANDERSEN, CALLOW, and DURHAM, JJ., concur.

BRACHTENBACH, J. (concurring)—I concur in the majority's result. I write separately, however, to emphasize our adherence to the analysis set forth in *In re Haverty,* 101 Wn.2d 498, 681 P.2d 835 (1984) and *In re Hagler,* 97 Wn.2d 818, 650 P.2d 1103 (1982).

Petitioner challenges the constitutionality of two jury instructions used in his 1969 conviction of first degree murder. He claims that the challenged instructions are erroneous under *Sandstrom v. Montana,* 442 U.S. 510, 61 L. Ed. 2d 39, 99 S. Ct. 2450 (1979). He asks us to apply *Sandstrom* retroactively and to grant his personal restraint petition based on the erroneous instructions. Since petitioner is unable to show actual and substantial prejudice resulting from the use of the instructions, however, his petition is properly denied.

In 1969, petitioner was convicted of one count of robbery, three counts of attempted robbery and felony murder. At trial, petitioner attempted to prove that he was either too intoxicated to formulate the requisite intent for robbery or that he could not comprehend his acts and did not know right from wrong when he attempted to rob the slain victim. The following jury instructions, which are now chal-

lenged, were given by the trial court:

### No. 9

The court instructs the jury that the law presumes that every man intends the natural and probable consequences of his own acts. It is not necessary to establish intent by direct and positive evidence but intent may be established by inference and in the same way as any other fact by taking into consideration the acts of the parties and all the facts and circumstances of the case.

### No. 25

The law presumes every man to be sane and mentally responsible, and to intend the natural and probable consequences of his acts, until the contrary is shown.

The burden of proving insanity as a defense to a crime rests upon the defendant to establish by a preponderance of the evidence, and unless insanity is established by a fair preponderance of the evidence, the presumption of sanity must prevail.

These instructions were not challenged on direct appeal. This court affirmed petitioner's conviction on all counts. *State v. Music,* 79 Wn.2d 699, 489 P.2d 159 (1971). After the United States Supreme Court vacated the death sentence in *Music v. Washington,* 408 U.S. 940, 33 L. Ed. 2d 764, 92 S. Ct. 2877 (1972), petitioner was resentenced to life imprisonment for the murder conviction, to run concurrently with the sentences on the other convictions for robbery and attempted robbery.

In 1979 the United States Supreme Court held an instruction nearly identical to that used in petitioner's trial unconstitutional. *Sandstrom v. Montana, supra.* The Court held that a jury instruction which creates either a conclusive or burden shifting presumption with respect to an element of a crime for which there must be specific intent conflicts with the presumption of innocence to which every person is constitutionally entitled. Such an instruction has the effect of relieving the State of its obligation to prove every element of a crime beyond a reasonable doubt. *Sandstrom,* 442 U.S. at 524. In 1980 this court followed *Sandstrom* and declared unconstitutional an instruction essentially identical to instruction 9 above. *State v. Cald-*

*well,* 94 Wn.2d 614, 618 P.2d 508 (1980).

Instructions 9 and 25 given in petitioner's trial contain the presumed intent language condemned in *Sandstrom.* Petitioner argues that *Sandstrom* and *Caldwell* should be applied to overturn his murder conviction.

Even if we assume that it was error for the challenged instructions to be given, the petitioner is not automatically entitled to relief. A personal restraint petitioner has the burden of proving that any constitutional error committed at trial caused actual and substantial prejudice. *In re Hagler, supra.* In cases such as this, we have in the past determined whether the required prejudice existed before we reached the question of whether to apply *Sandstrom. In re Hagler, supra; In re Haverty, supra.*

Actual prejudice must be determined in light of the totality of circumstances. This court will consider the jury instructions given, the arguments of counsel, the weight of evidence of guilt, and other relevant factors in evaluating whether a particular instruction caused actual prejudice. *In re Gunter,* 102 Wn.2d 769, 689 P.2d 1074 (1984). The ultimate question for this court is whether the giving of the *Sandstrom*–offending instruction so infected petitioner's entire trial that the resulting conviction violates due process. *In re Lile,* 100 Wn.2d 224, 668 P.2d 581 (1983).

Petitioner argues that instructions 9 and 25 actually prejudiced him because they might have been understood by the jury to be conclusive on the issue of intent, or to shift the burden of proof on that issue. Specifically, as to instruction 25, petitioner argues that the presumed intent phrase, in *combination* with the presumption of sanity instruction, caused him actual prejudice because the jury would reasonably assume, from the wording of the instruction, that petitioner had the burden of proof on intent as well as insanity.

A careful review of the record shows that the potential harm engendered by instructions 9 and 25 did not actually prejudice petitioner's trial. First, as to instruction 9, other jury instructions clearly informed the jury that it could *not*

convict petitioner if it found that he was "intoxicated to such a degree that he is not capable of forming a specific intent . . .". Instructions 10 and 11, immediately following the offensive instruction 9, made this point very plainly. Notably, petitioner concedes in his brief that he likely cannot prove actual prejudice as to instruction 9, because instructions 10 and 11 clearly stated that presumed intent is inapplicable if petitioner was too intoxicated to form intent. *See In re Haverty, supra,* where this very question was decided against petitioner.

Second, the evidence on the issue of petitioner's intent to rob Traice Walters is substantial. Two young men actually involved in the crimes with petitioner testified at petitioner's trial. Both of these men stated that all four occupants of the car, including petitioner, had the specific intent to rob Traice Walters and his companion of their leather jackets at the time they encountered the two victims. The testimony of these two companions was that Walters ran away from the car prior to any demand for his jacket; petitioner shot him in the back. Petitioner then robbed Walters' companion of his leather jacket and fired one shot in his direction as he ran away. The robbery of Walters' companion, immediately after the shooting of Walters, is further evidence of petitioner's intent to rob Walters also. Additionally, petitioner and his companions had been involved in several robbery attempts earlier that day and were involved in a robbery after the encounter with Walters and his companion.

The testimony that petitioner was so intoxicated that he could not form intent was very slight. Conversely, there was strong evidence that he did form such an intent. In view of the totality of evidence and the overall instructions, petitioner has failed to prove that the presumed intent instruction in instruction 9 so infected his trial as to deny him the due process of law.

Similarly, the repetition of the *Sandstrom*–offending phrase in instruction 25 caused no actual prejudice. The jury was clearly instructed that the State had the burden of

proof on *each* element of attempted robbery and that a reasonable doubt as to *any* element must result in petitioner's acquittal. Instruction 13. The jury was also instructed that the first element of attempted robbery is that defendant acted "willfully, unlawfully and feloniously". Instruction 16. In instruction 12, the terms willfully, unlawfully and feloniously were defined for the jury as "intentionally and purposely". Thus, the jury was clearly instructed that the State had the burden of proof on the element of intent. Although the general instruction on presumption of innocence and proof beyond a reasonable doubt (instruction 2) is alone insufficient to remedy a *Sandstrom*–offending instruction, *State v. Caldwell, supra* at 617, the overall instructions which reiterated the State's burden of proof on the element of intent, together with the very substantial evidence of petitioner's specific intent, indicate that petitioner cannot show actual prejudice from the mixed instruction given in instruction 25.

Furthermore, instruction 25 did not prejudice petitioner's *insanity* defense by mixing the issue of intent into the instruction. Petitioner does not challenge the rule that he, as the defendant, carried the burden of proof on the issue of insanity. The insanity instructions correctly stated that petitioner had that burden of proof. The presumed intent phrase of the instruction, now objected to by petitioner, imposed no *additional* burden upon him in presenting his insanity defense. Significantly, the jury was clearly instructed that it must acquit petitioner if it found that he could not comprehend his acts and did not know right from wrong when he attempted to rob Walters. Instruction 24.

A voluminous amount of expert testimony was offered by each side on the question whether petitioner could comprehend his acts and whether he knew right from wrong. Petitioner's expert witness expressed the opinion that petitioner did not know right from wrong at the moment the robbery of Walters and his companion was being planned by the group, but that he did know it was wrong to shoot a person when he shot Walters moments later. Because peti-

tioner was charged under the felony–murder rule, the relevant point in time for him to be capable of distinguishing right and wrong was during the *robbery,* not the shooting.

The State's expert testified that, in his professional opinion, it was not possible to so sharply demarcate petitioner's cognitive ability as to say that petitioner knew right from wrong at one point during the incident but not at another point. This expert testified that petitioner knew right from wrong at all relevant times that evening. The jury, in rejecting the insanity defense, evidently agreed with this expert witness that petitioner had not proven his insanity.

In sum, petitioner has not shown that the giving of instruction 9 actually prejudiced his trial. Similarly, he has not shown that the part of instruction 25 related to intent prejudiced his trial. Further, petitioner's insanity defense was not compromised by the mixed instruction on presumption of sanity and presumption of intent. Petitioner's failure to meet the threshold burden of showing actual and substantial prejudice arising from the use of the challenged instructions makes it unnecessary for us to address the issue of whether *Sandstrom v. Montana, supra,* and *State v. Caldwell, supra,* should be applied retroactively to his convictions.

Under the above *Hagler–Haverty* analysis, I concur.

UTTER, PEARSON, and GOODLOE, JJ., concur with BRACHTENBACH, J.