IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 33285-3-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JOHN THOMAS MUSIC, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

KORSMO, J. — The trial court vacated John Music's 1975 conviction for sodomy, determining that the repealed former statute was facially unconstitutional. Concluding that it was not facially unconstitutional and that Mr. Music did not meet his obligation to establish that the statute was unconstitutional as applied to his conduct, we reverse and reinstate the conviction.

PROCEDURAL HISTORY

A one-day crime spree on January 17, 1969, culminated in Mr. Music, then 19, fatally shooting a 15-year-old boy who fled from an attempted robbery rather than turn over his leather jacket. Mr. Music was convicted of murder, robbery, and three counts of attempted robbery. The death penalty was imposed for the murder conviction. *State v. Music*, 79 Wn.2d 699, 700-703, 489 P.2d 159 (1971). That sentence was vacated when the United States Supreme Court invalidated Washington's death penalty in 1972, and

Mr. Music was resentenced to life in prison on the murder count and lesser concurrent sentences for the other crimes. *In re the Pers. Restraint of Music*, 104 Wn.2d 189, 190, 704 P.2d 144 (1985); *see also Music v. Washington*, 408 U.S. 940, 92 S. Ct. 2877, 33 L. Ed. 2d 764 (1972); *Furman v. Georgia*, 408 U.S. 238, 92 S. Ct. 2726, 33 L. Ed. 2d 346 (1972).

On November 1, 1974, while serving his sentence in the state penitentiary, Mr. Music and several other prisoners engaged in a gang rape of another prisoner during a movie in the prison theater. From a later description, it appears that the victim, JM, was forced to fellate one prisoner at the same time another was anally penetrating him; this process continued with each of the six or more prisoners engaged in the assault. Mr. Music was convicted of one count of sodomy in April 1975, and sentenced to ten years in prison for that crime.[1]

Mr. Music was granted parole on the murder conviction in March 2010. He then began serving his sodomy sentence at the Airway Heights Correctional Center. On February 23, 2015, Mr. Music filed a motion to vacate his "consensual" sodomy

---

[1] Mr. Music appealed that conviction to this court, which assigned the case file no. 1557-III. His appointed counsel filed a brief in accordance with *Anders v. California*, 386 U.S. 738, 87 S. Ct. 1396, 18 L. Ed. 2d 493 (1967). There is no discussion about the facts of the case in this court's opinion, but one of the issues noted by counsel involved a potential argument that the evidence did not support the sodomy conviction because the victim was forced to commit sodomy on the defendant rather than the defendant performing the action on the victim. This court rejected the claim. *See State v. Music*, No. 1557-III, slip op. at 1 (Wash. Ct. App. Mar. 12, 1976).

conviction on the basis that the former statute was facially unconstitutional because it violated "a substantive right and fundamental liberty." Clerk's Papers (CP) at 1.

The motion proceeded to oral argument in the Walla Walla County Superior Court. Mr. Music argued that all general sodomy statutes were unconstitutional on their face under *Lawrence v. Texas*, 539 U.S. 558, 123 S. Ct. 2472, 156 L. Ed. 2d 508 (2003). In response, the State argued that *Lawrence* did not extend as far as Music argued, that prisoners had no right of sexual privacy, and that his conduct constituted rape. By letter, the trial court ruled that the former statute was unconstitutional on its face and that the State could have, but failed, to prosecute Music for rape.

The State moved to reconsider, again arguing that prisoners could not engage in consensual sexual relations and appending an affidavit from Music's defense attorney, retired Judge Donald Schacht. The affidavit described the victim testifying to being raped by six members of a prison motorcycle gang; he did not consent to the encounter. The defense replied that the statute was unconstitutional on its face and that the prosecution should have charged rape instead of sodomy. The trial court denied reconsideration "for reasons set out in defendant's response brief." CP at 129.

The State timely appealed to this court. The matter was considered without oral argument.

ANALYSIS

This case is in the peculiar posture of requiring a lengthy historical analysis of a statute repealed four decades ago and applying that understanding to a recent seminal case of constitutional law. After initially noting the legal standards applicable constitutional challenges, we turn to the reach of our sodomy and rape statutes in 1974 before considering *Lawrence* and its application to this case.[2]

The fundamental difference between the parties' respective arguments involves the standard to be applied in weighing the former sodomy statute under *Lawrence*. In determining the constitutionality of a statute, this court starts with a presumption that the statute is constitutional and reviews challenges de novo. *Lummi Indian Nation v. State*, 170 Wn.2d 247, 257-258, 241 P.3d 1220 (2010). A party may challenge the constitutionality of a statute as-applied in the specific context of that party's actions, or alternatively may facially challenge that the statute as unconstitutional in all of its applications. *City of Redmond v. Moore*, 151 Wn.2d 664, 668-669, 91 P.3d 875 (2004). To prevail on the former, the party must show a violation of a constitutional right. *Id.* at 669. To prevail on the latter, the party must show that no set of circumstances exists in which the statute can be constitutionally applied. *Id.* (citing *Wash. State Republican Party v. Pub. Disclosure Comm'n*, 141 Wn.2d 245, 282 n.14, 4 P.3d 808 (2000)). Holding a

---

[2] In light of our decision, we do not address the State's laches argument.

statute to be unconstitutional as-applied will prevent future application of that statute in similar circumstances, while holding a statute facially unconstitutional renders it totally inoperative. *Id.*

*History of Rape and Sodomy Statutes*

The statutes governing sex crimes in 1974 primarily were derived from chapter 6 of the Criminal Code of 1909, which defined a wide variety of crimes against morality and decency. LAWS OF 1909, ch. 249, §§ 183-247. There, rape was defined as "an act of sexual intercourse with a female not the wife of the perpetrator committed against her will and without her consent" and was punishable by five years in prison.[3] LAWS OF 1909 ch. 249, § 183. "Sexual intercourse" was defined merely as any "sexual penetration." *Id.* at 186. While the modern meanings of the terms "sexual intercourse" and "sexual penetration" encompass a broad range of sex acts, those terms had a much narrower meaning under the older statutes. Historically, "sexual intercourse" was purely synonymous with the more scientific term "copulation," both referring only to the specific act biologically capable of reproduction.[4]

---

[3] That law was amended by the Equal Rights Act of 1973 to be gender neutral by making it possible for a man to be a rape victim, without redefining "sexual intercourse." LAWS OF 1973, 1st Ex. Sess., ch. 154, § 122.

[4] *See State v. Snyder*, 199 Wash. 298, 300-301, 91 P.2d 570 (1939); BLACK'S LAW DICTIONARY 1541 (rev'd 4th ed. 1968) (defining sexual intercourse as "carnal copulation of male and female"); THE OXFORD ENGLISH DICTIONARY VOL. IX 582 (1970) (defining sexual intercourse as "copulation"); THE OXFORD ENGLISH DICTIONARY VOL. II 977-978 (1970) (defining copulation as "the union of the sexes in the act of generation").

The Code of 1909 defined sodomy as having carnal knowledge of "any male or female person by the anus, or with the mouth or tongue" and was punishable by ten years in prison.[5] LAWS OF 1909, ch. 249, § 204. This definition explicitly encompasses only sex acts that are outside the older meaning of "sexual intercourse." *See State v. Sawyer*, 12 Wn. App. 784, 785-787, 532 P.2d 654 (1975).[6] Consequently, in 1974 the legal meanings of sodomy and rape encompassed disjoint sets of sex acts, with the rape statutes only applying to instances of vaginal-penile intercourse and sodomy to other forms of sexual penetration.[7] The State could not have prosecuted Mr. Music for "rape" involving sexual conduct with a man.[8]

---

[5] The definition of sodomy also included voluntarily submitting to such carnal knowledge, as well as bestiality and necrophilia. In 1937, the sodomy statute was amended to increase the maximum penalty for acts committed upon children. LAWS OF 1937, ch. 74, § 3.

[6] Sexual intercourse with children under 18 was punished under the carnal knowledge statute. LAWS OF 1909, ch. 249, § 184; former RCW 9.79.020 (1973); *State v. Cunday*, 57 Wn.2d 122, 356 P.2d 609 (1960).

[7] Rape was then codified at former RCW 9.79.010 (1973), while sodomy was located at former RCW 9.79.100 (1937).

[8] Because they look at cases involving later revisions in the law, both parties mistakenly believe that Mr. Music could have been tried in 1974 for rape.

The rape statute lost its narrow reach in 1975 when the legislature broadened the definition of "sexual intercourse" to include the sex acts previously defined as sodomy.[9] LAWS OF 1975, 1st Ex. Sess., ch. 14, § 1. In that same session, the legislature enacted a comprehensive new criminal code that repealed the sodomy statute. LAWS OF 1975, 1st Ex. Sess., ch. 260, § 9A.92.010(209). However, the repealed laws remained effective into the next year. LAWS OF 1975, 1st Ex. Sess., ch. 260, § 9A.92.020. Consequently, from September 7, 1975 until July 1, 1976, the new rape law and the old sodomy law were both in effect. That fact led to this court addressing—and rejecting—an argument that the new rape law implicitly repealed the sodomy statute by extending rape to cover substantially the same conduct as sodomy. *State v. Levier*, 16 Wn. App. 332, 333-334, 555 P.2d 1003 (1976). This court concluded that the sodomy statute covered a broader range of conduct than the rape statute did. *Id.* at 334.

At the time of Music's sexual encounter with JM on November 1, 1974, sodomy was the only offense that applied to the actions described by JM. Rape was inapplicable because the 1974 incident did not involve male-female copulation outside of the marital

---

[9] "Sexual intercourse" (a) has its ordinary meaning and occurs upon any penetration, however slight, and (b) also means any penetration of the vagina or anus however slight, by an object, when committed on one person by another, whether such persons are of the same or opposite sex, except when such penetration is accomplished for medically recognized treatment or diagnostic purposes, and (c) also means any act of sexual contact between persons involving the sex organs of one person and the mouth or anus of another whether such persons are of the same or opposite sex. LAWS OF 1975, 1st Ex. Sess., ch. 14, § 1.

relationship. The sodomy statute was applicable to both men[10] and women and was the only method of prosecuting non-consensual anal or oral penetration.

*Lawrence v. Texas*

In *Lawrence*, Texas officers had entered a private house in response to an allegation of a weapon being fired and discovered the petitioners engaged in anal intercourse with each other. 539 U.S. at 562-563. The two men were prosecuted under the Texas deviant sexual intercourse statute that prohibited oral and anal sexual contact between two persons of the same sex. *Id.* at 563. The United States Supreme Court ultimately granted certiorari to determine if the Texas statute violated either the equal protection or due process clauses, and to decide whether *Bowers v. Hardwick*[11] should be overruled. *Id.*

The five justice majority opinion resolved the case on due process grounds, framing the issue as "whether the petitioners were free as adults to engage in the private conduct in the exercise of their liberty under the Due Process Clause of the Fourteenth Amendment to the Constitution."[12] *Id.* at 564. The majority concluded that their case

---

[10] Since there was no non-marriage element, sodomy was the only means of prosecuting a husband who anally or orally assaulted his wife. The non-marriage element was removed from our rape statutes by Laws of 1983, ch. 118.

[11] 478 U.S. 186, 106 S. Ct. 2841, 92 L. Ed. 2d 140 (1986).

[12] Justice O'Connor concurred in the result, finding the Texas statute violated the equal protection clause. 539 U.S. at 579-585.

8

law showed "an emerging awareness that liberty gives substantial protection to adult persons in deciding how to conduct their private lives in matters pertaining to sex." *Id.* at 572. The majority overruled *Bowers* after criticizing the narrow scope of the issue addressed by that opinion: "whether the Federal Constitution confers a fundamental right upon homosexuals to engage in sodomy." *Id.* at 566 (quoting *Bowers*, 478 U.S. at 190). *Lawrence* recognized that the narrow issue in *Bowers* "discloses the Court's own failure to appreciate the extent of the liberty at stake." *Id.* at 567. Those interests were far more involved than *Bowers* recognized:

> To say that the issue in *Bowers* was simply the right to engage in certain sexual conduct demeans the claim the individual put forward, just as it would demean a married couple were it to be said marriage is simply about the right to have sexual intercourse. The laws involved in *Bowers* and here are, to be sure, statutes that purport to do no more than prohibit a particular sexual act. Their penalties and purposes, though, have more far-reaching consequences, touching upon the most private human conduct, sexual behavior, and in the most private of places, the home. The statutes do seek to control a personal relationship that, whether or not entitled to formal recognition in the law, is within the liberty of persons to choose without being punished as criminals.
> This, as a general rule, should counsel against attempts by the State, or a court, to define the meaning of the relationship or to set its boundaries absent injury to a person or abuse of an institution the law protects. It suffices for us to acknowledge that adults may choose to enter upon this relationship in the confines of their homes and their own private lives and still retain their dignity as free persons. When sexuality finds overt expression in intimate conduct with another person, the conduct can be but one element in a personal bond that is more enduring. The liberty protected by the Constitution allows homosexual persons the right to make this choice.

*Id.*

9

Finally, the majority concluded with the observation that its opinion did not address minors, public conduct, prostitution, or those "who might be injured or coerced or who are situated in relationships where consent might not easily be refused." *Id.* at 578. Instead, that case "does involve two adults who, with full and mutual consent from each other, engaged in sexual practices common to a homosexual lifestyle. The petitioners are entitled to respect for their private lives." *Id.* The due process clause prohibited the State from "making their private sexual conduct a crime." *Id.*

*Application*

With these historical forays, both recent and distant, in mind, it finally is time to apply this history to the arguments presented. The trial court concluded that the former sodomy statute was facially unconstitutional under *Lawrence*. We disagree that *Lawrence* cast its nets so widely.

First, *Lawrence* itself emphasized that it only addressed consensual, adult same sex relationships. It expressly exempted statutes involving minors, non-consensual relationships, public conduct, prostitution, and relationships involving injury. *Id.* Second, *Lawrence* addressed a very narrow statute that expressly applied only to same sex relationships. *Id.* at 563. In contrast, Washington's sodomy statute does not appear

to have historically been used to prosecute consenting adults; instead, it appears the statute was used in cases of assaultive conduct, frequently involving children.[13]

Accordingly, we conclude that *Lawrence* recognizes a personal liberty interest in consensual adult sexual behavior. It does not forbid sodomy prosecutions for non-consensual, public, or adult-child relationships. The reading of *Lawrence* urged by Mr. Music effectively treats that case as extending constitutional protections to specific sexual actions rather than according human dignity to private adult sexual relationships.

*Lawrence* does not support a facial challenge to Washington's former sodomy statute. That statute was the sole means of addressing certain forms of sexual abuse that the former rape statutes did not reach. The former statute also addressed criminal conduct that *Lawrence* expressly exempted from its holding; it was not addressed solely to consensual adult behavior. Since the former sodomy statute applied to criminal conduct beyond that invalidated in *Lawrence*, it is not facially invalid. *Moore*, 151 Wn.2d at 669.

---

[13] *See, e.g.*, *State v. Harp*, 13 Wn. App. 239, 534 P.2d 842 (1975) (male defendant anally raped female victim); *State v. Sawyer*, 12 Wn. App. 784, 532 P.2d 654 (1975) (adult forced 10-year-old girl to fellate him); *State v. Paradis*, 72 Wn.2d 563, 434 P.2d 583 (1967) (adult had consensual sex with a 14-year-old boy); *State v. Holbrook*, 66 Wn.2d 278, 401 P.2d 971 (1965) (adult sodomizing young boys); *State v. Little*, 149 Wash. 38, 270 P. 103 (1928) (carnal knowledge of a female child under 18); *State v. Beaudin*, 76 Wash. 306, 136 P. 137 (1913) (defendant committed sodomy on his 2-year-old daughter). Our review of over 100 published sodomy cases did not reveal any convictions stemming from private actions between consenting adults.

Thus, for Mr. Music to prevail here he needed to establish that the statute was unconstitutional as applied to his behavior. Although he alleged that his sexual encounter with JM was consensual, he made no effort to prove that point and the trial court did not enter any findings in support of that argument. In contrast, the evidence presented by the State through newspaper clippings and the affidavit of an attorney who recalled the victim's testimony indicated that Mr. Music engaged in non-consensual sexual contact that likely would be addressed under our modern rape statutes.

We conclude that Mr. Music did not establish that he was prosecuted for a consensual adult same sex relationship that is protected by *Lawrence*.[14] We reverse the order vacating the 1975 sodomy conviction.

Reversed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Korsmo, J.

WE CONCUR:

Siddoway, J.

Sypolt, J.P.T.

---

[14] We therefore need not address the question of whether *Lawrence* applies to the prison setting.

12