# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In the Matter of the Personal Restraint of: | No. 57352-1-II |
| JARROD ALLAN AIRINGTON, | UNPUBLISHED OPINION |
| Petitioner. | |

CHE, J. — The trial court transferred Jarrod A. Airington's CrR 7.4(a)(3) motion to arrest judgment to this court as a personal restraint petition under CrR 7.8(c)(2) following his post-*Blake*[1] resentencing. The trial court determined Airington's motion was time barred by RCW 10.73.090, Airington had not made a substantial showing he was entitled to relief, and resolution of the matter did not require a factual hearing.

Airington challenges his conviction for first degree unlawful possession of a firearm, asserting that (1) his motion was timely and its transfer to this court was improper, and (2) the State presented insufficient evidence to sustain his conviction because the State did not prove that the alleged firearm was "operable" and a gun in fact under former RCW 9.41.010(11) (2018). Airington further argues the State's charging document for first degree unlawful possession of a firearm was constitutionally deficient because it failed to allege knowledge, an essential element of the crime.

---

[1] *State v. Blake*, 197 Wn.2d 170, 481 P.3d 521 (2021).

We hold (1) the trial court erred in finding Airington's CrR 7.8 motion untimely but correctly transferred it to this court; (2) there is sufficient evidence in the record for a rational trier of fact to find beyond a reasonable doubt that Airington unlawfully possessed a firearm in the first degree; and (3) Airington fails to show actual and substantial prejudice resulting from any defect in the charging document related to his first degree unlawful possession of a firearm conviction. Accordingly, we deny Airington's petition.

FACTS

In 2018, Airington, while at home, accused Brandon Craven of stealing heroin and pointed a .45 caliber gun[2] at Craven. Craven denied stealing a "piece" of heroin.[3] Pet'r's Opening Br. App. A at 168. Airington stripped Craven of his clothes and tied Craven to a chair. Airington and others proceeded to kick repeatedly, stab, and hit Craven with a walking stick and other items. Airington attempted to take Craven elsewhere, but Craven ran away once outside.

Later, police served a search warrant on Airington's residence, which he shared with others. Detective Sgt. Joe Strong discovered a .22 "chrome revolver with [a] wood grip" inside a blue tote in the living room area of Airington's residence and logged the gun's serial number. Pet'r's Opening Br. App. A at 251. Strong disengaged the cylinder from the gun prior to handing it to Detective Sgt. Darrin Wallace. Wallace had been a police officer for 12 years after retiring from 20 years of military service; both employments provided firearms training.

Wallace explained the .22 caliber gun's design was such that the cylinder was attached, but after hitting a switch, it was made to fold or pop out for loading and unloading ammunition.

---

[2] This gun is not the basis for the first degree unlawful possession of a firearm charge.

[3] A common name for one ounce of heroin is a "piece." Pet'r's Opening Br. App. A at 168.

Wallace explained that when the cylinder is hanging out, the gun does not fire until it is locked back in.

The .22 caliber gun was not sent to the Washington State Patrol Crime Laboratory for ballistic testing and it was never test fired as part of the investigation. No .22 bullets were found while executing the search warrant. Wallace testified that he did not know if the gun was operational, but that he had no reason to believe the gun did not work. While executing the search warrant, police also seized methamphetamine, heroin, "crib notes,"[4] and drug packaging material.

The State charged Airington with count 1, first degree kidnapping, count 2, second degree assault, count 3, unlawful possession of methamphetamine with intent to deliver, count 4, unlawful possession of heroin with intent to deliver, and count 5, unlawful possession of a firearm in the first degree, specifically a .22 pistol.[5] Airington pleaded not guilty and a jury convicted Airington of counts 1 through 5.

Airington appealed, and Division Three affirmed Airington's convictions but remanded for resentencing in light of *State v. Blake*, 197 Wn.2d 170, 481 Pd.3d 521 (2021). Airington was resentenced on April 15, 2022.

On May 20, 2022, Airington filed a CrR 7.4(a)(3) motion in the trial court. In his motion, Airington alleged the State failed to present sufficient evidence that he possessed a firearm as defined by law in the first degree unlawful possession of a firearm charge.

---

[4] A common name for a log used to keep track of money owed related to narcotics sales is a "crib note." Pet'r's Opening Br. App. A at 376.

[5] The trial court sua sponte dismissed count 6, possession of methamphetamine with intent to deliver. Pet'r's Opening Br. App. A at 522.

On June 13, 2022, the trial court treated Airington's motion as a CrR 7.8 motion and transferred it to this court for consideration as a personal restraint petition after finding the motion was time barred by RCW 10.73.090. The trial court also determined that Airington did not substantially show he was entitled to relief and resolution of the matter did not require a factual hearing. Airington filed a statement of additional grounds (SAG), which this court accepted as a motion to supplement the petition.

ANALYSIS

I. TIMELINESS AND TRANSFER OF AIRINGTON'S MOTION

Airington argues his motion[6] was timely under RCW 10.73.090 because it was filed within one year of the judgment and sentence becoming final and, alternatively, it was timely under RCW 10.73.100(4)[7] because the time bar does not apply. Airington also appears to contest the trial court's transfer of his motion to this court. The State concedes that Airington's motion was timely. We agree that Airington's motion was timely, but, to the extent that Airington argues the trial court's transfer of his motion to this court for consideration as a personal restraint petition (PRP) under CrR 7.8 was improper, we disagree.

---

[6] The trial court had authority to characterize Airington's opposition to his firearm conviction as a CrR 7.8 motion and treat it as such. *See State v. Reanier*, 157 Wn. App. 194, 202, 237 P.3d 299, 303 (2010).

[7] The one-year time bar for collateral attacks under RCW 10.73.090 does not apply to a petition or motion based solely upon one or more grounds in RCW 10.73.100, including when "[t]he defendant pleaded not guilty and the evidence introduced at trial was insufficient to support the conviction." RCW 10.73.090; RCW 10.73.100(4).

No. 57352-1-II

A.      *Legal Principles*

Under CrR 7.8(b), a defendant may bring a motion for relief from a judgment or order for

the following reasons:

> (1) Mistakes, inadvertence, surprise, excusable neglect or irregularity in obtaining
> a judgment or order; (2) Newly discovered evidence which by due diligence could
> not have been discovered in time to move for a new trial under rule 7.5; (3) Fraud
> (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other
> misconduct of an adverse party; (4) The judgment is void; or (5) Any other reason
> justifying relief from the operation of the judgment.

CrR 7.8(b)(1)-(5).  The motion must be made within a reasonable time, and for reasons (1) and

(2), no more than one year after entry of the judgment, proceeding, or order; the motion is

subject to RCW 10.73.090, .100, .130, and .140.  CrR 7.8(b)(5).

We review a trial court's determination on a CrR 7.8 motion for an abuse of discretion.

*State v. Robinson*, 193 Wn. App. 215, 217, 374 P.3d 175 (2016).  Under this standard of review,

a trial court's decision will be reversed only if it was (1) based on untenable grounds or reasons

or (2) manifestly unreasonable.  *Id.*  A manifestly unreasonable decision adopts a view that a

reasonable person would not take.  *Salas v. Hi-Tech Erectors*, 168 Wn.2d 664, 669, 230 P.3d 583

(2010).  When a trial court relies on unsupported facts or applies the incorrect legal standard, it

bases its decision on untenable grounds or reasons.  *Id.*

Under CrR 7.8(c)(2), the trial court shall transfer a CrR 7.8 motion to the Court of

Appeals unless the trial court determines that the motion is not barred by RCW 10.73.090 and

either that "the defendant has made a substantial showing that they are entitled to relief" or

"resolution of the motion will require a factual hearing."

A petition or motion for collateral attack, including a PRP, on a judgment and sentence in

a criminal case may not be filed more than one year after the judgment becomes final if the

5

judgment and sentence is valid on its face and was entered by a court of competent jurisdiction. RCW 10.73.090(1), (2). An exception to the one-year time bar applies when the motion or petition is based on a claim that the defendant pleaded not guilty and the evidence introduced at trial was insufficient to support the conviction. RCW 10.73.100(4).

B. *Airington's Motion Was Timely and Transfer Was Required Because Airington Did Not Make a Substantial Showing That He Was Entitled to Relief*

Airington's motion was timely because he filed it within one year after the judgment on his resentence became final. *See* CrR 7.8(b)(5). The trial court entered the amended judgment and sentence on April 15, 2022. RP at 1. Airington filed his motion on May 20, 2022. That is well within one year after the judgment became final. And the State concedes Airington's motion was timely. Thus, we hold the trial court erred in finding Airington's CrR 7.8 motion untimely.

But, the trial court's transfer of Airington's motion to this court was required by CrR 7.8 even though it was not time barred by RCW 10.73.090. The trial court concluded that Airington did not make a substantial showing that he was entitled to relief and that resolution of the matter would not require a factual hearing. Airington argues the trial court abused its discretion in coming to this conclusion because his motion "noted the lack of any evidence suggesting the revolver was an operable firearm." Pet'r's Opening Br. at 17. Airington's argument fails because a showing of the alleged firearm's operability was not required, as we discuss more fully below. Thus, we hold the trial court did not abuse its discretion in transferring Airington's motion to this court for consideration as a PRP because transfer of the motion was required under CrR 7.8.

## II. Personal Restraint Petition

Relief by way of a collateral challenge is extraordinary such that "the petitioner must meet a high standard before this court will disturb an otherwise settled judgment." *In re Pers. Restraint of Coats*, 173 Wn.2d 123, 132, 267 P.3d 324 (2011). The personal restraint petitioner must show either (1) a constitutional error that resulted in actual and substantial prejudice or (2) a nonconstitutional, fundamental defect that inherently resulted in a complete miscarriage of justice. *Id.* To show actual and substantial prejudice, the petitioner bears the burden of establishing that the outcome of the trial "would more likely than not have been different had the alleged error not occurred." *In re Pers. Restraint of Davis*, 200 Wn.2d 75, 86, 514 P.3d 653 (2022). Merely showing that an error at trial created a possibility of prejudice is insufficient to warrant relief. *In re Pers. Restraint of Meippen*, 193 Wn.2d 310, 315-16, 440 P.3d 978 (2019).

A.   *Sufficiency of the Evidence*

Airington argues that his conviction for first degree unlawful possession of a firearm is based on insufficient evidence because the State failed to prove that the firearm was operable and a "gun in fact."[8] Pet'r's Opening Br. at 14. Airington argues that the State failed to prove the alleged firearm was real and operable because the firearm was never test-fired and no firearms expert testified that it met the legal definition of a firearm. We disagree.

---

[8] We address Airington's arguments together because they require the same analysis. An item is a "gun in fact" if it is capable of firing a projectile by an explosive. Former RCW 9.41.010(11) (2018). The resulting inquiry requires addressing whether the item in question is capable of operating in such a way. Airington appears to acknowledge that the two arguments are really one argument.

1. *Legal Principles*

A defendant's assertion of insufficient evidence to sustain a conviction asserts a constitutional error. *In re Pers. Restraint of Crow*, 187 Wn. App. 414, 421, 349 P.3d 902 (2015).

The State must prove all elements of a crime beyond a reasonable doubt. *In re Pers. Restraint of Arntsen*, 2 Wn.3d 1022, 543 P.3d 821, 825 (2024). In reviewing challenges to the sufficiency of the evidence, we consider whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. *Id.* A claim of insufficiency of the evidence admits the truth of the State's evidence and all reasonable inferences that can be drawn from that evidence. *Id.*

To prove first degree unlawful possession of a firearm, the State must prove that the defendant "owns, has in [their] possession, or has in [their] control any firearm after having previously been convicted or found not guilty by reason of insanity in this state or elsewhere of any serious offense as defined in this chapter." Former RCW 9.41.040(1)(a) (2018). A "firearm" is "a weapon or device from which a projectile or projectiles may be fired by an explosive such as gunpowder." Former RCW 9.41.010(11) (2018).

A firearm need not be operable during the commission of a crime to constitute a firearm within the meaning of the former unlawful possession of a firearm statute.[9] *State v. Raleigh*, 157 Wn. App. 728, 734, 238 P.3d 1211 (2010). Rather, the relevant inquiry is "whether the firearm is a 'gun in fact' rather than a 'toy gun.'" *Id.*

---

[9] Former RCW 9.41.040(1)(a) (2005)

2. *The Evidence Was Sufficient to Convict Airington of First Degree Unlawful Possession of a Firearm*

Airington relies on *State v. Recuenco*, 163 Wn.2d 428, 180 P.3d 1276 (2008), and *State v. Pierce*, 155 Wn. App. 701, 230 P.3d 237 (2010), for the proposition that the State must prove operability. Both *Recuenco* and *Pierce* held that a jury must be given sufficient evidence to find a firearm operable in order to uphold a *firearm sentencing enhancement*. 163 Wn.2d at 437; 155 Wn. App. at 714. But, in *Olsen*, an appeal involving unlawful possession of a firearm,[10] this court held that the State was *not* required to prove that a firearm be operable at the time of the commission of the crime. 10 Wn. App. 2d 731, 738, 449 P.3d 1089 (2019). This court expressly rejected its analysis in *Pierce*, stated that the language in *Recuenco* was nonbinding dicta, and noted that the mention of operability in *Recuenco* and *Pierce* was intended only to emphasize that differences exist between a deadly weapon sentencing enhancement and a firearm sentencing enhancement. *Olsen*, 10 Wn. App. 2d at 737-38. Because Airington's sufficiency claim rests on the failed premise that the State was required to prove operability, he is not entitled to relief on these grounds.

Here, sufficient evidence shows that the firearm at issue was a gun in fact, not a toy gun. Detective Sgt. Wallace, based on firearms training received as a police officer and former member of the military, identified the firearm as a .22 caliber revolver. Furthermore, after identifying the gun model, Wallace explained the revolver's design, how its cylinder is attached, how the revolver is loaded and unloaded, and how the revolver is incapable of firing when the cylinder is out.

---

[10] *Olsen* analyzes the language of former RCW 9.41.010(11) (2015), which includes the same language at issue here in former RCW 9.41.010(11) (2018)—the statute in effect at the time of Airington's crime.

Wallace did not know if the revolver was operational, but Wallace did not have any reason to believe the revolver did not work.

Another police officer, Detective Sgt. Strong, who located the firearm, disengaged its cylinder prior to handing it to Wallace. Strong also identified the firearm as a revolver and marked the evidence box "chrome revolver with a wood grip," noting its caliber and serial number. Pet'r's Opening Br. App. A at 251. The revolver, displaying a serial number, was admitted as an exhibit at trial. Thus, a rational trier of fact could conclude, beyond a reasonable doubt, that the revolver was a real gun and not merely a toy gun.

After viewing the evidence in the light most favorable to the State and admitting the truth of the State's evidence and all reasonable inferences drawn from that evidence, we hold that there is sufficient evidence in the record for a rational trier of fact to find beyond a reasonable doubt that Airington unlawfully possessed a firearm in the first degree as defined in former RCW 9.41.040(1)(a) (2018) and former RCW 9.41.010(11) (2018).[11]

A.      *Sufficiency of Charging Document*

Airington argues that the charging document was deficient because it did not include the element of "knowledge" for the crime of first degree unlawful possession of a firearm. Pet'r's Reply Br. at 7. The State concedes this issue, but we reject the State's concession. Airington fails to show that the alleged error caused actual and substantial prejudice.

---

[11] At trial, Airington did not dispute the possession element (actual or constructive) of his firearm conviction, and Airington stipulated to a prior qualifying conviction preventing him from possessing firearms. In Airington's reply brief, Airington appears to dispute whether the State proved the possession element. We decline to review this issue because it was raised for the first time in a reply brief. *Matter of Rhem*, 188 Wn.2d 321, 327, 394 P.3d 367 (2017).

1. *Legal Principles*

Under the Sixth Amendment to the United States Constitution, a defendant in a criminal prosecution "shall enjoy the right . . . to be informed of the nature and cause of the accusation." Similarly, Article I, section 22 of the state constitution gives a defendant "the right . . . to demand the nature and cause of the accusation against him, to have a copy thereof." This means that, at a minimum, charging documents must include all essential elements of a crime—statutory and non-statutory—to afford notice to defendants of the charges against them and to allow them to prepare their defenses. *State v. Hopper*, 118 Wn.2d 151, 155, 822 P.2d 775 (1992).

The failure to apprise a defendant of the nature and cause of a criminal accusation is a constitutional error. *In re Brockie*, 178 Wn.2d 532, 536, 309 P.3d 498 (2013); *State v. Kjorsvik*, 117 Wn.2d 93, 97, 812 P.2d 86 (1991). In order to obtain relief through a PRP, a petitioner alleging a constitutional error is required to show that the alleged error caused actual and substantial prejudice. *Brockie*, 178 Wn.2d at 539.

We determine actual prejudice in light of the totality of circumstances. *In re Pers. Restraint of Music*, 104 Wn.2d 189, 191, 704 P.2d 144 (1985). In determining whether actual prejudice exists, we ask whether the error "so infected petitioner's entire trial that the resulting conviction violates due process." *Id.*

2. *Airington Has Not Shown Actual and Substantial Prejudice Due to Any Error in the Charging Document*

Assuming without deciding that Airington's charging document was deficient, Airington nonetheless fails to meet his burden of showing he was actually and substantially prejudiced by

11

the alleged error. Airington cites a decision challenging a charging document on direct appeal, *Kjorsvik*, 117 Wn.2d at 105-06, and appears to impliedly argue that his conviction must be vacated without Airington showing that any defect in the charging document resulted in actual and substantial prejudice. But, in a PRP collateral review, a defective charging document does not demonstrate per se prejudice, so the petitioner must still show the alleged error caused actual and substantial prejudice in order to obtain relief. *Matter of St. Pierre*, 118 Wn.2d 321, 329, 823 P.2d 492 (1992); RCW 10.73.090.

Airington does not demonstrate that he was actually and substantially prejudiced by the omission of the knowledge element in the charging document for the firearm charge. Airington fails to provide citations to authority and references to the relevant parts of the record to show how the alleged omission "so infected [his] entire trial that the resulting conviction violates due process." *Music*, 104 Wn.2d at 191; RAP 10.3(a)(6). While Airington mentions in passing that he was prejudiced by the alleged error, Airington's conclusory statements are insufficient to meet his burden. Thus, we hold Airington fails to show actual and substantial prejudice resulting from any defect in the charging document for the first degree unlawful possession of a firearm conviction.

No. 57352-1-II

CONCLUSION

We deny Airington's petition.

A majority of the panel having determined that this opinion will not be printed in the

Washington Appellate Reports, but will be filed for public record in accordance with RCW

2.06.040, it is so ordered.

Che, J.

We concur:

Lee, J.

Cruser, C.J.